PUBLISHED

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROBERT P. SARTIN, SR.; ROBERT P.
SARTIN, JR.; MARIE M. MCGINNESS
SARTIN; TED GRIFFIN; G. DONALD
LAYNO; JOHN MICHAEL WILSON;
RONALD FRAHM; SHARON FRAHM;
DOUG CLINE; EDWARD L. SARTIN;
EDWARD A. SARTIN; CHRISTOPHER T.
SARTIN; SARTIN SERVICES,
INCORPORATED; RICHARD SARTIN,
　　　　　*Plaintiffs-Appellees,*

　　　　　　v.

JOHN D. MACIK,
　　　　　*Defendant-Appellant.*

No. 07-1464

Appeal from the United States District Court
for the Western District of North Carolina, at Charlotte.
Frank D. Whitney, District Judge.
(3:06-cv-00075)

Argued: May 15, 2008

Decided: July 28, 2008

Before WILLIAMS, Chief Judge, and MICHAEL
and MOTZ, Circuit Judges.

---

Reversed and remanded by published opinion. Judge Motz wrote the
opinion, in which Judge Michael joined. Chief Judge Williams wrote
a dissenting opinion.

---

**COUNSEL**

**ARGUED:** Bradley Eli Pearce, KATTEN, MUCHIN & ROSEN-MAN, LLP, Charlotte, North Carolina, for Appellant. Benjamin D. Overby, VERNON, VERNON, WOOTEN, BROWN, ANDREWS & GARRETT, PA, Burlington, North Carolina, for Appellees. **ON BRIEF:** E. Lawson Brown, Jr., VERNON, VERNON, WOOTEN, BROWN, ANDREWS & GARRETT, PA, Burlington, North Carolina, for Appellees.

---

**OPINION**

DIANA GRIBBON MOTZ, Circuit Judge:

In this case, we confront a question of North Carolina law that the state courts have yet to address. We must determine whether a state default judgment, entered as a penalty for a party's failure to comply with a North Carolina court's discovery order, has collateral estoppel effect in subsequent litigation in bankruptcy court. The bankruptcy court, in a decision upheld by the district court, found that the North Carolina courts would give collateral estoppel effect to the default judgment. For the reasons that follow, we disagree and therefore reverse the judgment of the district court and remand for further proceedings.

I.

John D. Macik, John Adalio, James Coffin, and Negotiation Plus Sports Management, Ltd., together founded TeamDriver.com, Inc., an internet-based business intended to become "the multi-media connection between motorsports celebrities, drivers, teams and the racing fan." They hoped that the TeamDriver.com website would grow to accommodate on-line photo galleries, chat areas, a racing retail store, an on-line auction house, and eventually live video and audio feeds providing behind-the-scenes access to races, including "helmet/hat cams" and "wide-angle tool box cams." They also intended to establish an on-line auction site in partnership with eBay that would allow racing teams to "liquidate their used and damaged racing parts and

one-of-a-kind team items" to eagerly awaiting racing fans. In an effort to generate investment in TeamDriver.com, Macik and the others circulated documents to potential investors describing their plans for developing the site, the proposed structure of the organization, and profit and loss projections based on itemized predictions of revenue, operating expenses, and set-up expenses.

On the basis of these proposals, Macik and the others successfully solicited a total of $213,200 from a number of investors, including the appellees in this case, Robert P. Sartin, Sr., Robert P. Sartin, Jr., Marie M. McGinness Sartin, Ted Griffin, G. Donald Layno, John Michael Wilson, Ronald Frahm, Sharon Frahm, Doug Cline, Edward L. Sartin, Edward A. Sartin, Christopher T. Sartin, Sartin Services, Inc., and Richard Sartin (collectively, "the Sartins"). The Sartins lost their investment, however, when the business failed shortly after TeamDriver.com's inception.

Alleging that Macik used the funds invested in TeamDriver.com for personal purposes, the Sartins brought an action against Macik in state court in Guilford County, North Carolina. The Sartins alleged breach of fiduciary duty, constructive fraud, fraud, negligence and gross negligence, breach of contract, misappropriation and conversion of funds, misrepresentation, and unfair and deceptive trade practices. Although Macik answered the Sartins' complaint, he failed to respond to interrogatories and requests for production of documents, despite the state court's order compelling discovery. When Macik then did not appear for a hearing, the state court found that he had willfully failed to comply with the discovery order and that this failure entitled the Sartins to judgment by default. On March 4, 2004, the court struck Macik's answer and awarded the Sartins $213,200 in actual damages, which the court then trebled to $639,600 under the state's unfair and deceptive trade practices statute, and costs and attorneys fees. The Sartins attempted to execute the judgment against Macik but were unsuccessful.

In June 2005, Macik and his wife, Paula C. Macik, filed a voluntary Chapter 7 bankruptcy petition. The Sartins brought an adversary proceeding in that bankruptcy action, seeking to have the state court judgment against Macik declared nondischargeable in bankruptcy pursuant to 11 U.S.C. § 523(a) (2000). That section of the Bankruptcy

Code provides that a discharge in bankruptcy does not extend to certain kinds of debts, including those "for money . . . obtained by . . . false pretenses, a false representation, or actual fraud," "for fraud . . . while acting in a fiduciary capacity," and "for willful and malicious injury by the debtor to . . . the property of another." *Id.* § 523(a)(2), (4), (6).

The bankruptcy court found, and the district court agreed, that the state court default judgment for the Sartins against Macik had collateral estoppel effect, barring Macik from arguing in the bankruptcy court that § 523(a)(2), (4), and (6) did not apply to his debt to the Sartins. The bankruptcy court thus held that the debt arising from the state court judgment was nondischargeable, and the district court affirmed that decision.[1] "We review the judgment of a district court sitting in review of a bankruptcy court de novo, applying the same standards of review that were applied in the district court." *Three Sisters Partners, L.L.C. v. Harden (In re Shangra-La, Inc.)*, 167 F.3d 843, 847 (4th Cir. 1999).

## II.

Federal courts must give the same preclusive effect to a state court judgment as the forum that rendered the judgment would have given it. *See Allen v. McCurry*, 449 U.S. 90, 96 (1980); *Pahlavi v. Ansari (In re Ansari)*, 113 F.3d 17, 19 (4th Cir. 1997). Therefore, to determine the preclusive effect of the state default judgment against Macik, we must apply North Carolina law.

---

[1]In the alternative, the bankruptcy court held that Macik's debt to the Sartins was nondischargeable because "the *Rooker-Feldman* doctrine" barred Macik from asserting defenses that were "elements of the underlying state law claims." But as the Supreme Court made clear in *Exxon Mobil Corp. v. Saudi Basic Industries Corp.*, 544 U.S. 280, 284 (2005), the *Rooker-Feldman* doctrine only bars collateral attacks on state court judgments; it does not supplant the normal rules of preclusion. Macik does not seek to have the default judgment on his state law claims overturned, so the *Rooker-Feldman* doctrine does not apply. Instead the rules of preclusion govern whether a litigant may, in a bankruptcy proceeding, revisit an issue previously addressed in a state court action. *Id.* at 291-93; *see also Davani v. Va. Dep't. of Transp.*, 434 F.3d 712, 718-19 (4th Cir. 2006).

Preclusion doctrine encompasses two strands: res judicata and collateral estoppel. Res judicata, or claim preclusion, bars the relitigation of any claims that were or could have been raised in a prior proceeding between the same parties. *See Thomas M. McInnis & Assocs., Inc. v. Hall*, 349 S.E.2d 552, 556-57 (N.C. 1986). Neither party contends that the case at hand involves res judicata.

Rather, the preclusion doctrine relevant to the present case is collateral estoppel, or issue preclusion, which bars the relitigation of specific issues that were actually determined in a prior action. *See id.*[2] In order to assert collateral estoppel under North Carolina law, a party must show that the issue in question was identical to an issue actually litigated and necessary to the judgment, that the prior action resulted in a final judgment on the merits, and that the present parties are the same as, or in privity with, the parties to the earlier action. *See id.* at 557. North Carolina courts have abandoned the final requirement of "mutuality of estoppel" for the defensive use of collateral estoppel, so long as the party seeking to reopen the issue "had a full and fair opportunity to litigate" the matter in the previous action. *See id.* at 560.

As to the first requirement — that the issue in question was identical to an issue actually litigated and necessary to the judgment — the Supreme Court of North Carolina has held that parties must satisfy four additional criteria:

> (1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and *actually litigated* in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action

---

[2]Many federal courts and the Restatement (Second) of Judgments "prefer[ ] to substitute the terms 'claim preclusion' (rather than res judicata) and 'issue preclusion' (rather than collateral estoppel)." *Hall*, 349 S.E.2d at 556 n.1. Because North Carolina courts generally use the traditional terms "res judicata" and "collateral estoppel," we use those terms throughout this opinion, even when referring to the Restatement's analysis.

must have been necessary and essential to the resulting judgment.

*State v. Summers*, 528 S.E.2d 17, 20 (N.C. 2000) (emphasis added) (citing *King v. Grindstaff*, 200 S.E.2d 799, 806 (N.C. 1973)).

This case presents the question of whether a North Carolina court would hold that issues resolved in a default judgment have been "actually litigated" for purposes of that judgment and so carry collateral estoppel effect in subsequent litigation. As the parties acknowledge, the Supreme Court of North Carolina has never resolved, or directly addressed, this question.

The Supreme Court of North Carolina has, however, clearly stated on several occasions that it follows "traditional" formulations of res judicata and collateral estoppel. *See Whitacre P'ship v. Biosignia, Inc.*, 591 S.E.2d 870, 880 (N.C. 2004) (stating that "North Carolina recognizes both doctrines as traditionally formulated"); *Hall*, 349 S.E.2d at 557 ("North Carolina currently recognizes both doctrines in their traditional guise."). Indeed, as recently as 2004, the Supreme Court of North Carolina explicitly noted that the only respect in which it has chosen to depart from the traditional rules of collateral estoppel is to "abandon[ ] the strict 'mutuality of estoppel' requirement for defensive uses of collateral estoppel." *Whitacre P'ship*, 591 S.E.2d at 880.[3]

Moreover, the Supreme Court of North Carolina has relied upon section 27 of the Restatement when defining "collateral estoppel as [that doctrine was] traditionally applied." *See Hall*, 349 S.E.2d at 557. Section 27 provides that "[w]hen an issue of fact or law is actually

---

[3]As the Supreme Court noted in *Blonder-Tongue Laboratories, Inc. v. University of Illinois Foundation*, 402 U.S. 313, 320-27 (1971), the mutuality requirement has been under attack since at least 1936. By the time the Court issued *Blonder-Tongue* in 1971, many state and federal courts had already "rejected the mutuality requirement," especially for the defensive assertion of collateral estoppel. *See id.* at 324. In 1986, North Carolina joined "[t]he modern trend" by "abandon[ing] the requirement of mutuality" for defensive uses of collateral estoppel. *See Hall*, 349 S.E.2d at 559-60; *Whitacre P'ship*, 591 S.E.2d at 880.

litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim." Restatement (Second) of Judgments § 27 (1982). The comments to section 27 explain, however, that "[i]n the case of a judgment entered by confession, consent, or *default*, *none of the issues is actually litigated*. Therefore, the rule of this Section does *not* apply with respect to any issue in a subsequent action." Restatement (Second) of Judgments § 27 cmt. e (1982) (emphasis added). Notably, the Restatement's approach with respect to collateral estoppel differs from the traditional rule it articulates for res judicata because a default judgment involving the same *claim* does have preclusive effect in a subsequent action. *See* Restatement (Second) of Judgments § 17 cmt. d (1982).

Thus, under the Restatement, default judgments do not possess collateral estoppel effect, even though they do possess res judicata effect. Other authoritative sources confirm that the Restatement accurately describes the *traditional* rule that default judgments have no collateral estoppel effect, while acknowledging that some courts have created exceptions to this traditional rule. *See* 18 James Wm. Moore et al., *Moore's Federal Practice* § 132.03[2][k] (3d ed. 2008); 50 C.J.S. *Judgments* § 797 (2008); 18A Charles Alan Wright, Arthur R. Miller, & Edward H. Cooper, *Federal Practice and Procedure* § 4440 (2d ed. 2002); 47 Am. Jur. 2d *Judgments* § 542 (2008).

In sum, the Supreme Court of North Carolina has indicated both that it follows the traditional rule for collateral estoppel and that it views the Restatement as presenting this rule. Thus, as we have previously noted in dicta, North Carolina courts have continued to adhere to the traditional view "that a default judgment cannot be used for collateral estoppel purposes." *Ansari*, 113 F.3d at 22 (internal quotation marks and alterations omitted). As a federal court applying North Carolina law, we accordingly hold that under that state's law, the default judgment against Macik is not entitled to collateral estoppel effect in the subsequent bankruptcy proceeding.

## III.

In holding to the contrary, the bankruptcy court and the district court relied on inapplicable precedent and conflated two of the requirements for collateral estoppel.

The bankruptcy court noted our dicta in *Ansari*, but citing *Cassell v. United States*, 348 F. Supp. 2d 602, 605 (M.D.N.C. 2004), it concluded that North Carolina law had evolved to accord collateral estoppel effect to default judgments. In *Cassell* a district court sitting in North Carolina did give a default judgment collateral estoppel effect, but in that case the court applied *federal* preclusion law, not North Carolina law. The bankruptcy court also relied on two other cases in which courts applied federal preclusion law, *Bush v. Balfour Beatty Bahamas, Ltd. (In re Bush)*, 62 F.3d 1319, 1323 & n.6 (11th Cir. 1995), and *FDIC v. Daily (In re Daily)*, 47 F.3d 365, 368 (9th Cir. 1995), and a third case in which the court looked to Texas, rather than North Carolina, preclusion law, *Gober v. Terra + Corp. (In re Gober)*, 100 F.3d 1195, 1201-02, 1204-06 (5th Cir. 1996).

In reviewing the bankruptcy court's decision, the district court similarly relied on inapplicable precedent. The court found it persuasive that North Carolina courts had given preclusive effect to default judgments in *Holly Farm Foods, Inc. v. Kuykendall*, 442 S.E.2d 94, 97-98 (N.C. Ct. App. 1994), and *Naddeo v. Allstate Insurance Co.*, 533 S.E.2d 501, 505-07 (N.C. Ct. App. 2000). Both cases, however, merely held a default judgment to be *res judicata* in a subsequent proceeding, which of course simply conforms to the traditional rule set forth in the Restatement that default judgments do possess preclusive effect for *res judicata* purposes.[4] *See* Restatement (Second) of Judgments § 17 cmt. d (1982). Neither *Holly Farms* nor *Naddeo* holds that an issue decided via a default judgment has been actually litigated or is entitled to preclusive effect for *collateral estoppel* purposes.

The district court also reasoned, and the Sartins argue on appeal, that the default judgment should be given collateral estoppel effect because Macik had a "full and fair opportunity to litigate" the issue before the state court. This argument mistakenly conflates two separate requirements for collateral estoppel. Like other states, North Carolina has adopted the rule that a previous judgment has collateral

---

[4]*Naddeo* also found that certain issues became the law of the case while others were waived. *See* 533 S.E.2d at 507. Although the defendant in *Naddeo* raised both res judicata and collateral estoppel as defenses, the court based its holding on res judicata and law of the case. *See id.* at 506-07.

estoppel effect only when, first, the specific *issue* was actually litigated in the prior action, *see e.g.*, *Hall*, 349 S.E.2d at 557, and, second, the *party* seeking to relitigate previously enjoyed a "full and fair opportunity to litigate" the issue, even if that party chose not to do so, *see id.* at 559-60; *Miller Bldg. Corp. v. NBBJ N.C., Inc.*, 497 S.E.2d 433, 435 (N.C. Ct. App. 1998) (citing *Hall*, 349 S.E.2d at 557, 560).

Although the two requirements initially sound similar, the "actual litigation" requirement concerns the *issues* at stake, while the "opportunity to litigate" requirement concerns the *parties* affected. The latter requirement emerged in response to the modern trend relaxing strict mutuality. Whereas, formerly, the parties in both the previous and present suits had to be identical to, or in privity with, one another for collateral estoppel to apply, *see Hall*, 349 S.E.2d at 557, now individuals not party to the initial suit may assert issue preclusion in some circumstances. *See id.* at 559-60 (applying the "opportunity to litigate" requirement to the defensive use of collateral estoppel); *see also Rymer v. Estate of Sorrells*, 488 S.E.2d 838, 840 (N.C. Ct. App. 1997) (extending the "opportunity to litigate" requirement to the offensive use of collateral estoppel); Restatement (Second) of Judgments §§ 27, 29 (1982) (setting forth in section 27 the requirement that an issue be "actually litigated" for collateral estoppel to apply and explaining in section 29 that collateral estoppel may apply in suits involving individuals not party to the original suit "unless" the party seeking to relitigate "lacked full and fair opportunity to litigate the issue in the first action"). In the present case, no one disputes that the *parties* are identical in both actions; the only issue is whether the default judgment satisfies the separate "actual litigation" requirement for *issues*.

Nothing in *Hall* or subsequent North Carolina cases indicates that the requirement that parties be afforded an "opportunity to litigate" has *replaced* the requirement that issues must have been "actually litigated" in the prior proceeding.[5] Rather, since *Hall*, both the Supreme

---

[5]In fact, *Hall* itself illustrates the continued relevance of both requirements. In *Hall*, the Supreme Court of North Carolina first found that the "actual litigation" requirement had been met, but that the mutuality of estoppel requirement was unsatisfied. 349 S.E.2d at 557-58. The court then declined to require mutuality between the parties because the party against whom collateral estoppel was asserted had enjoyed a full and fair opportunity to litigate in the initial forum. *Id.* at 560.

Court of North Carolina and lower state courts have continued to articulate and apply the "actual litigation" requirement when resolving questions regarding collateral estoppel. *See, e.g.*, *Beckwith v. Llewellyn*, 391 S.E.2d 189, 191 (N.C. 1990); *Bluebird Corp. v. Aubin*, 657 S.E.2d 55, 61-62 (N.C. Ct. App. 2008); *Gregory v. Penland*, 634 S.E.2d 625, 631-32 (N.C. Ct. App. 2006).

We recognize that good policy reasons would seem to support a holding that gives collateral estoppel effect to at least some default judgments. Judgments like the present one, which result from the deliberate abuse of the judicial process, seem to merit preclusive effect. Were we deciding this case as a matter of federal common law, such considerations might well be dispositive. But however wise such a rule may be, we may not apply it in this case absent some indication from the North Carolina courts that they would also adopt this approach. And we have no such indication here.[6]

IV.

For the foregoing reasons, we reverse the judgment of the district court and remand to the district court with instructions to remand to the bankruptcy court for further proceedings consistent with this opinion. Of course, on remand, the bankruptcy court may independently determine — if so asked by the Sartins — that the Macik's debt is nondischargeable under 11 U.S.C. § 523(a). The court may not, however, rely on the asserted collateral estoppel effect of the state default judgment to reach this conclusion.

*REVERSED AND REMANDED*

---

[6]A certification process would greatly facilitate the resolution of unresolved questions of state law like the present one by ensuring the correct legal outcome, aiding in judicial economy, and manifesting proper respect for federalism. *See e.g.*, *Lehman Bros. v. Schein*, 416 U.S. 386, 391 (1974); *Clay v. Sun Ins. Office Ltd.*, 363 U.S. 207, 212 (1960). Unfortunately, the State of North Carolina has not yet adopted such a process.

WILLIAMS, Chief Judge, dissenting:

Until today, courts addressing the collateral-estoppel, or preclusive, effect of a default judgment entered as a sanction for refusal to comply with discovery orders have uniformly refused to give parties that have abused a prior judicial process a second bite at the apple. I disagree with the majority's conclusion that the Supreme Court of North Carolina, if presented with the question, would be the first to reach a contrary result. In my view, the majority errs in seizing on prefatory language in two North Carolina decisions indicating that North Carolina applies the doctrine of collateral estoppel in its traditional form — except where it has opted not to do so by embracing the modern trend of abandoning the strict "mutuality of estoppel" requirement — and treating it as dispositive of the issue before us. Rather, a fair reading of North Carolina law suggests that a party who begins litigating an issue but ultimately forestalls its resolution on the merits by refusing to comply with discovery orders is collaterally estopped from relitigating that same issue. Accordingly, I respectfully dissent.[1]

## I.

Whether the doctrine of collateral estoppel precludes Macik from contesting issues underlying the state-court default judgment presents a legal question that we review *de novo* in his on-going bankruptcy proceeding. *See In re Duncan*, 448 F.3d 725, 728 (4th Cir. 2006) (explaining that because "[w]e review the judgment of a district court sitting in review of a bankruptcy court *de novo*, applying the same

---

[1]I agree with the majority that the *Rooker-Feldman* doctrine does not bar Macik from asserting defenses to Appellees' claim that debt arising from the North Carolina state court judgment is nondischargeable. The Supreme Court has made clear that the *Rooker-Feldman* doctrine "is confined to cases of the kind from which the doctrine acquired its name: cases brought by state-court losers complaining of injuries caused by state-court judgments rendered before the district court proceedings commenced and inviting district court review and rejection of those judgments." *Exxon Mobil Corp. v. Saudi Basic Indus. Corp.*, 544 U.S. 280, 284 (2005). It does not "otherwise override or supplant preclusion doctrine or augment the circumscribed doctrines that allow federal courts to stay or dismiss proceedings in deference to state-court actions." *Id.*

standards of review that were applied in the district court," we "review findings of fact for clear error and questions of law *de novo*").

We have an obligation to afford "full faith and credit" to state acts and judicial proceedings. 28 U.S.C.A. § 1738 (West 2006). Accordingly, in deciding the preclusive effect of a state-court judgment, we must look to the law of the state that rendered the judgment to determine whether the courts of that state would afford the judgment preclusive effect. *In re Ansari*, 113 F.3d 17, 19 (4th Cir. 1997). Because the judgment here originated in North Carolina, we apply North Carolina's law of collateral estoppel.

In applying North Carolina law, we treat the decisions of the state's highest court, the Supreme Court of North Carolina, as controlling. If the Supreme Court of North Carolina has not yet resolved an issue, we must offer our best judgment about what that court would do. In so doing, "we may of course consider all of the authority that the state high court[ ] would, and we should give appropriate weight to the opinions of [the state's] intermediate appellate courts." *Food Lion, Inc. v. Capital Cities/ABC, Inc.*, 194 F.3d 505, 512 (4th Cir. 1999); *see also Castillo v. Emergency Med. Assocs., P.A.*, 372 F.3d 643, 648 (4th Cir. 2004) ("When there is no decision by the highest state court, a federal court must apply what it finds to be the state law after giving proper regard to relevant rulings of other courts of the State." (internal quotation marks and alteration omitted)).

The Supreme Court of North Carolina recognizes the doctrine of collateral estoppel "as traditionally formulated." *Whitacre P'ship v. Biosignia, Inc.*, 591 S.E.2d 870, 880 (N.C. 2004). Thus, it requires parties seeking to preclude relitigation of an issue to satisfy the same elements traditionally required for collateral estoppel to apply:

> (1) the issues must be the same as those involved in the prior action, (2) the issues must have been raised and actually litigated in the prior action, (3) the issues must have been material and relevant to the disposition of the prior action, and (4) the determination of the issues in the prior action must have been necessary and essential to the resulting judgment.

*State v. Summers*, 528 S.E.2d 17, 20 (N.C. 2000);[2] *cf., e.g.*, Restatement (Second) of Judgments § 27 (1982) ("When an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties whether on the same or a different claim."). North Carolina has, however, "followed the modern trend in abandoning the strict 'mutuality of estoppel' requirement [(the requirement that both parties be bound by the prior judgment)] for defensive uses of collateral estoppel." *Whitacre P'ship*, 591 S.E.2d at 880.[3]

The Supreme Court of North Carolina has not yet spoken to the question presented in this case. We, however, have previously applied North Carolina's law of collateral estoppel in the default-judgment context, holding in *In re Raynor*, 922 F.2d 1146 (4th Cir. 1991), that a default judgment entered after one party failed to appear did not have preclusive effect in a subsequent proceeding because the issues in the case had not been actually litigated. *See In re Raynor*, 922 F.2d. at 1149 (explaining that "an indispensible requirement of . . . issue preclusion or collateral estoppel[ ]is actual litigation of the issue," which had not occurred because Raynor had not been aware of the proceeding). Thus, the narrow question facing us is whether the same result obtains where, as here, a party commences litigation but ultimately frustrates the resolution of an issue's merits by refusing to comply with discovery orders.

Macik argues, and the majority agrees, that the Supreme Court of

---

[2]The majority mistakenly treats *State v. Summers*, 528 S.E.2d 17, 20 (N.C. 2000), as imposing "additional criteria" supplementing the requirement, outlined in *Thomas M. McInnis & Assocs., Inc. v. Hall*, 349 S.E.2d 552 (N.C. 1986), that the issue in question be identical to an issue actually litigated and necessary to the judgment. Majority Op. at 5. Plainly, *Summers* simply uses a slightly different format to describe the same elements outlined in *Hall*.

[3]The majority emphasizes that the Supreme Court of North Carolina has not explicitly embraced any other "depart[ure] from the traditional rules of collateral estoppel." Majority Op. at 6. Given that no other "modern trends" appear to have been presented for that court's consideration, however, its silence on this front is hardly deafening.

North Carolina would decide this question in keeping with the general rule expressed by comment e to Section 27 of the Restatement of Judgments that "[i]n the case of a judgment entered by confession, consent, or default, none of the issues is actually litigated." Restatement 2d Judgments § 27 cmt. e. Because this conclusion stretches the language of the Restatement too far, I disagree.

The Restatement expressly contemplates only four circumstances giving rise to "issues which might have been but were not litigated and determined in [a] prior action": (1) when "the defendant might have interposed [the issue] as an affirmative defense but failed to do so"; (2) when the issue "is raised by a material allegation of a party's pleading but is admitted (explicitly or by virtue of a failure to deny) in a responsive pleading"; (3) when the issue "is raised in an allegation by one party and is admitted by the other before evidence on the issue is adduced at trial"; and (4) when the issue "is the subject of a stipulation between the parties." Restatement 2d Judgments § 27 cmt. e. It explains that applying collateral estoppel in these circumstances could "serve to discourage compromise, to decrease the likelihood that the issues in an action would be narrowed by stipulation, and thus to intensify litigation." *Id.* Further articulating the policy considerations underlying the "actual litigation" requirement, the Restatement notes that "[t]here are many reasons why a party may choose not to raise an issue, or to contest an assertion, in a particular action," such as an inconvenient forum or a minimal amount in controversy; in addition, the interests underlying the preclusion doctrine — conserving judicial resources, maintaining consistency, and avoiding harassment — "are less compelling when the issue on which preclusion is sought has not actually been litigated before." *Id.* The Restatement does not specifically address whether an issue should be considered "actually litigated" if a party commences litigation and declines to follow through on its contentions without abandoning its adversarial posture. It does, however, acknowledge the possibility that "even if [an issue] was not litigated, the party's reasons for not litigating in the prior action may be such that preclusion would be appropriate." *Id.* This concession, in my view, shows that the Restatement view is not necessarily a bar to the application of collateral estoppel in this case.

Moreover, in addition to the Restatement, the Supreme Court of North Carolina might well seek guidance in the decisions of other

jurisdictions. In so doing, it would find that every federal circuit court to consider the question has held that a default judgment entered as a sanction for refusal to comply with discovery orders has preclusive effect. *See In re Ansari*, 113 F.3d 17, 19 (4th Cir. 1997) (applying Virginia law); *In re Docteroff*, 133 F.3d 210, 215 (3d Cir. 1997) (federal law); *In re Gober*, 100 F.3d 1195, 1203-05 (5th Cir. 1996) (Texas law); *In re Bush*, 62 F.3d 1319, 1323-25 (11th Cir. 1995) (federal law); *In re Daily*, 47 F.3d 365, 368-69 (9th Cir. 1995) (federal law). In each case, these courts "d[id] not hesitate in holding that a party . . . who deliberately prevents resolution of a lawsuit[ ] should be deemed to have actually litigated an issue for purposes of collateral estoppel application." *In re Docteroff*, 133 F.3d at 215.

Indeed, the most analogous North Carolina precedent on point, *Thomas M. McInnis & Assocs., Inc. v. Hall*, 349 S.E.2d 552 (N.C. 1986), suggests that the Supreme Court of North Carolina would prove no more hesitant in this regard. Although Macik argues that an issue cannot be deemed actually litigated without a judgment on the merits, the *Hall* court did not take a particularly strict view of "actual litigation." Instead, the *Hall* court held that an issue — entitlement to prejudgment interest — was actually litigated in a prior action where the plaintiff raised the issue in its pleadings and to the judge after the jury verdict, but the judge determined that it was an issue of fact that had been waived because the plaintiff had not requested that it be submitted to the jury. *Id.* at 557-58. The *Hall* majority reached this conclusion despite criticism from two justices, both of whom argued in a separate concurring opinion that the absence of a decision on the merits of the entitlement issue posed a bar to the application of collateral estoppel. *Id.* at 561-64 (Billings, C.J., concurring). The concurrence argued that the issue was not actually litigated because it was never determined that the plaintiff was not entitled to prejudgment interest, only that she had waived any right recover it. *Id.* at 562 (Billings, C.J., concurring). This contention, however, did not persuade a majority of the court.

Finally, there is no indication that, unlike the majority in this case and the other courts to consider this issue, the Supreme Court of North Carolina would prove unmoved by the "good policy reasons," Majority Op. at 10, supporting application of collateral estoppel in

this instance.[4] In my view, North Carolina's high court would be no less reluctant to "encourage behavior similar to [Macik's] and give litigants who abuse the processes and dignity of the court an undeserved second bite at the apple." *Docteroff*, 133 F.3d at 215.

## II.

For the foregoing reasons, I respectfully dissent from the majority's decision to reverse the district court's collateral estoppel ruling and remand for further proceedings.

---

[4]The majority volunteers that it would likely reach a different result if left to its own devices. *See* Majority Op. at 10 (explaining that the "good policy reasons [that] would seem to support a holding that gives collateral estoppel effect to at least some default judgments . . . might well be dispositive").