*By order of the Bankruptcy Appellate Panel, the precedential effect of this decision is limited to the case and parties pursuant to 6th Cir. BAP LBR 8024-1(b). See also 6th Cir. BAP LBR 8014-1(c).*

File Name: 17b0001n.06

# BANKRUPTCY APPELLATE PANEL

## OF THE SIXTH CIRCUIT

_____

In re: GREGORY LANE COUCH; ANGELA LEE COUCH,
                                                                *Debtors.*

_____

PANTHER PETROLEUM, LLC ; COOLANTS PLUS, INC.,
                                            *Plaintiffs-Appellees,*          No. 16-8009

        *v.*

GREGORY LANE COUCH

                                            *Defendant-Appellant.*

Appeal from the United States Bankruptcy Court
for the Eastern District of Kentucky at London.
No. 14-61443; Adv. P. 15-6021, Gregory R. Schaaf, Judge.

Argued: November 9, 2016

Decided and Filed: February 2, 2017

Before: HARRISON, OPPERMAN, and PRESTON, Bankruptcy Appellate Judges.

_____

### COUNSEL

**ARGUED:** R. Aaron Hostettler, HAMM, MILBY & RIDINGS, PLLC, London, Kentucky, for Appellant. Joseph E. Lehnert, KEATING MUETHING & KLEKAMP PLL, Cincinnati, Ohio, for Appellees. **ON BRIEF:** R. Aaron Hostettler, HAMM, MILBY & RIDINGS, PLLC, London, Kentucky, for Appellant. Joseph E. Lehnert, Brian P. Muething, Jason V. Stitt, KEATING MUETHING & KLEKAMP PLL, Cincinnati, Ohio, for Appellees.

1

_____

**OPINION**

_____

DANIEL S. OPPERMAN, Bankruptcy Appellate Panel Judge. The bankruptcy court granted summary judgment to Plaintiff-Appellees Panther Petroleum, LLC ("Panther") and Coolants Plus, Inc. ("Coolants") on their non-dischargeability complaint after finding that Debtor Gregory Couch ("Couch") was precluded from litigating the issues of whether he committed fraud and whether the debt arose from a willful and malicious injury due to a Tennessee state court judgment. Couch filed an appeal asserting that collateral estoppel is not applicable and that the bankruptcy court did not apply the appropriate summary judgment standard. For the reasons stated below, the bankruptcy court's order granting summary judgment is AFFIRMED.

**ISSUE ON APPEAL**

The issue on appeal is whether the bankruptcy court erred in granting summary judgment to the plaintiffs on their nondischargeability complaint based on the application of collateral estoppel of a state court judgment. Couch asserts that the bankruptcy court did not apply the correct elements for collateral estoppel under Tennessee law. He asserts that collateral estoppel is not applicable because the prior decision was a default judgment, and thus not on the merits, and because he did not have a full and fair opportunity to litigate.

**JURISDICTION AND STANDARD OF REVIEW**

A grant of summary judgment is a conclusion of law, reviewed de novo. *Medical Mutual of Ohio v. K. Amalia Enters*., Inc., 548 F.3d 383, 389 (6th Cir. 2008). "Summary judgment is proper if the evidence, taken in the light most favorable to the nonmoving party, shows that there are no genuine issues of material fact and that the moving party is entitled to a judgment as a matter of law." *Id*. (citing *Mazur v. Young*, 507 F.3d 1013, 1016 (6th Cir. 2007)). "Under a de novo standard of review, the reviewing court decides the issue independently of, and without deference to, the trial court's determination." *Menninger v. Accredited Home Lenders (In re Morgeson)*, 371 B.R. 798, 800 (6th Cir. BAP 2007) (citing *Treinish v. Norwest Bank Minn., N.A. (In re Periandri)*, 266 B.R. 651, 653 (6th Cir. BAP 2001)).

"The determination of the applicability of collateral estoppel is also reviewed de novo." *Spring Works, Inc. v. Sarff (In re Sarff)*, 242 B.R. 620, 623 (6th Cir. BAP 2000) (citing *Markowitz v. Campbell (In re Markowitz)*, 190 F.3d 455, 461 (6th Cir. 1999)).

*Anderson v. Fisher (In re Anderson)*, 520 B.R. 89, 91 (B.A.P. 6th Cir. 2014).

## FACTS

On or about January 1, 2013, Couch began working for Panther and its subsidiary Coolants. Couch asserts that Panther and Coolants induced him and his wife to leave well-paying jobs based upon grandiose promises which were never fulfilled. Sometime in 2013, while still working for Panther, Couch started his own company, Oil Wholesellers. Couch and a co-worker, Christopher Burns ("Burns") sold Panther petroleum products and products from unrelated sellers to third party buyers through Oil Wholesellers. Couch asserts that he remitted whatever funds were owed to Panther or other third party distributors for the sale price. When Panther discovered Couch's activities, it terminated his employment.

On August 30, 2013, Panther and Coolants initiated a lawsuit against Couch and Burns in Tennessee state court. The state court complaint alleged fraud, conversion, breach of contract, tortious interference with business relationships, and other claims including alleged violations of the Tennessee Consumer Protection Act (Tenn. Code Ann. § 47-18-109) ("TCPA"). Through an attorney, Couch appeared and filed an answer to the state court complaint on October 7, 2013. Couch also filed a counter-complaint. In September 2014, while the case was pending, Couch's attorney moved for leave to withdraw from the case, asserting that Couch had failed to communicate. The state court granted the motion. Following withdrawal of his counsel, Couch did not submit responses to Panther's discovery, nor did he take any action to pursue his counterclaims.

Couch and his wife, Angela, filed a chapter 7 bankruptcy petition on December 11, 2014. Couch did not list the lawsuit in his schedules, nor did he inform the state court of the bankruptcy petition. On February 9, 2015, the state court entered a default judgment in favor of Panther and Coolants on all the causes of action, including the counterclaims. Afterward, on April 24, 2015, Couch and his wife received their discharge and the bankruptcy case was closed.

On June 2, 2015, the state court held an evidentiary hearing on damages. On June 15, 2015, the state court entered an order finding that:

> [T]he Plaintiffs are entitled to a monetary judgment against Defendant Greg Couch in the compensatory amount of $156,205.56 for lost profits based upon the difference of Plaintiffs [sic] product purchased by Greg Couch through "dummy" and/or fake accounts and the sale of those products to third persons, including existing customers of Plaintiff Panther Petroleum, plus freight charges incurred by Plaintiffs. The Court further finds Defendant Greg Couch engaged in intentional, willful, and malicious conduct and caused injury to Plaintiff through his actual fraud and false pretenses. The Court therefore finds Plaintiffs are entitled to treble compensatory damages pursuant to the Tennessee Consumer Protection Act (hereinafter "TCPA") (Tenn. Code Ann.§ 47-18-109) and for inducement of breach of contract (Tenn. Code Ann. § 47-50-109). The Court specifically finds that an award of treble damages is proper pursuant to the TCPA as a result of Defendant Greg Couch intentionally, willfully, and maliciously causing injury and damages to Plaintiffs.

*In re Couch*, 544 B.R. 867, 871–72 (Bankr. E.D. Ky. 2016) (quoting Order of Final Judgment ("Final Judgment"), Adv No. 15-6021 ECF 15-1, Exh. I). In total, Panther and Coolants were awarded the sum of $529,616.68 and court costs.

After the entry of the Final Judgment, Panther and Coolants learned for the first time that Couch had filed a bankruptcy petition. On July 30, 2015, Panther and Coolants filed an adversary proceeding pursuant to § 523(a)(3)(B) and Federal Rule of Bankruptcy Procedure 4007(b) seeking a determination that their claims are non-dischargeable pursuant to § 523(a)(2)(A) (Count I), § 523(a)(4) (Count II) and § 523(a)(6) (Count III). They asserted that the allegations in the state court complaint are the same as the allegations raised in the nondischargeability complaint. Panther and Coolants moved for summary judgment on all counts. The bankruptcy court held a hearing on December 16, 2015.

On January 7, 2016, the bankruptcy court entered a memorandum opinion and separate judgment granting the motion for summary judgment as to Counts I and III.[1] The bankruptcy court determined that Panther and Coolants had met their burden of proving that Couch was precluded from re-litigating the issues of fraud and willful and malicious injury based on the

---

[1]The bankruptcy court entered a conditioned order voluntarily dismissing Count II. Accordingly, there are no pending counts and the summary judgment order is final.

state court judgment. The bankruptcy court carefully compared the elements for each count of the dischargeability complaint with the allegations raised in the state court action and found that the same issues raised by the § 523(a)(2)(A) and § 523(a)(6) causes of action were raised in the state court action, but that the issues raised by the § 523(a)(4) count were not.

> As the bankruptcy court noted:
>
> The elements necessary to prove fraud under Tennessee law are virtually identical to the elements necessary to prove a debt is non-dischargeable for fraud under § 523(a)(2)(A). [*Fisher v. Anderson (In re Anderson)*], 2014 WL 98691 at *5 [(Bankr. E.D. KY 2014)] (*citing Rally Hill Prods. v. Bursack (In re Bursack)*, 163 B.R. 302, 305 (Bankr.M.D.Tenn.1994)). Thus, a finding of fraud by the state court precludes Couch from re-litigating the same issue in a § 523(a)(2)(A) action.

*In re Couch*, 544 B.R. 867, 874 (Bankr. E.D. Ky. 2016). The bankruptcy court also found:

> The state court also made a specific finding that Couch engaged in "intentional, willful, and malicious conduct . . ." and was "intentionally, willfully and maliciously causing injury and damages to Plaintiffs." [Lehnert Affidavit, ECF No. 15–1 at Exh. I.] This is the same conduct relied on by the state court in finding Couch committed fraud and the intentional, willful and malicious nature of the conduct is the basis of the state court's award of treble damages under the TCPA. [*Id.*]

*Couch*, 544 B.R. at 874–75. However, the bankruptcy court determined:

> There are insufficient findings by the state court to address the elements necessary to prove a debt is non-dischargeable under § 523(a)(4). The Plaintiffs sought damages for breach of fiduciary duty and conversion in the state court, which are counts often associated with a § 523(a)(4) action. The state court issued a finding that the Plaintiffs are entitled to damages for lost profits "based upon the difference of Plaintiffs product purchased by Greg Couch through 'dummy' and/or fake accounts and the sale of those products to third persons." [Lehnert Affidavit, ECF No. 15-1, at Exh. I.] This finding suggests the intentional tort of conversion, but the state court did not find that Couch was a fiduciary or that his activities rose to the level of embezzlement or larceny. Thus, fraud or defalcation by a fiduciary, embezzlement or larceny were not actually litigated in the state court action and collateral estoppel cannot apply under § 523(a)(4).

*Couch*, 544 B.R. at 875–76. Couch filed a motion to alter or amend the judgment on January 11, 2016. The bankruptcy court denied the motion on March 4, 2016. Couch then timely filed this appeal.

## DISCUSSION

Collateral estoppel, otherwise termed issue preclusion, bars "successive litigation of an issue of fact or law actually litigated and resolved in a valid court determination essential to the prior judgment, even if the issue recurs in the context of a different claim." *Taylor v. Sturgell*, 553 U.S. 880, 891, 128 S. Ct. 2161, 171 L. Ed. 2d 155 (2008) (internal citation and quotation marks omitted).

*Arkansas Coals, Inc. v. Lawson*, 739 F.3d 309, 320 (6th Cir. 2014). The Supreme Court of the United States has made clear that "collateral estoppel principles do indeed apply in discharge exception proceedings pursuant to §523(a)." *Grogan v. Garner*, 498 U.S. 279, 285, 111 S. Ct. 654, 658 n.11 (1991).

Federal courts must, accordingly, give state court judgments "the same preclusive effect as would be given that judgment under the law of the State in which the judgment was rendered[,]" *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81, 104 S. Ct. 892, 79 L. Ed. 2d 56 (1984), and if a claim or issue would be barred under state law, the judgment in question is entitled to preclusive effect. *Marrese v. Am. Acad. of Orthopaedic Surgeons*, 470 U.S. 373, 386, 105 S. Ct. 1327, 84 L. Ed. 2d 274 (1985); *Bay Area Factors v. Calvert (In re Calvert)*, 105 F.3d 315, 317 (6th Cir. 1997).

*SunTrust Bank v. Bennett (In re Bennett)*, 517 B.R. 95, 100 (Bankr. M.D. Tenn. 2014).

Under Tennessee law, collateral estoppel bars relitigation by the same parties of legal or factual issues actually raised and determined in an earlier proceeding whereby the court's decision is conclusive against the parties in subsequent proceedings. *Mullins v. State*, 294 S.W.3d 529, 534 (Tenn. 2009); *Gibson v. Trant*, 58 S.W.3d 103, 113 (Tenn. 2001) (holding that collateral estoppel applies to both issues of law and issues of fact). The party asserting collateral estoppel bears the burden of proof "that the issue was, in fact, determined in a prior suit between the same parties," *Dickerson v. Godfrey*, 825 S.W.2d 692, 695 (Tenn. 1992), by demonstrating the following:

> (1) that the issue sought to be precluded is identical to an issue decided in an earlier proceeding; (2) that the issue sought to be precluded was actually raised, litigated, and decided on the merits in the earlier proceeding; (3) that the judgment in the earlier proceeding has become final; (4) that the party against whom collateral estoppel is asserted was a party or is in privity with a party to the earlier proceeding; and (5) that the party against whom collateral estoppel is asserted had a full and fair opportunity in the earlier proceeding to contest the issue now sought to be precluded.

> *Mullins*, 294 S.W.3d at 535. Moreover, in order for the doctrine of collateral estoppel to apply, the issue must not only have been actually litigated and decided, it must also have been necessary to the judgment. *State v. Thompson*, 285 S.W.3d 840, 848 (Tenn. 2009); *Dickerson v. Godfrey*, 825 S.W.2d at 695.

*Bennett*, 517 B.R. at 101.

In this appeal, Couch argues that two of the five elements required for collateral estoppel are not present. Specifically, he asserts that the issues were not actually decided on the merits because the state court judgment is a default judgment. Second, he argues that due to the actions of his previous counsel, as well as the actions of Panther and Coolants, he did not have a full and fair opportunity to litigate the issues in the prior proceeding. Couch asserts that the bankruptcy court did not apply the correct law regarding collateral estoppel because it relied on *Bursack* and *Anderson* and that the law has changed since those decisions to add the two elements that he presses.

As explained *infra*, the bankruptcy did consider both of the additional elements espoused by Couch. *See Couch*, 544 B.R. at 876 ("The two factors cited by Couch are not new; they are considered as part of the factors reviewed in this Opinion.").

A. **"Actually Litigated/Decided on the Merits"**

The bankruptcy court recognized that the Final Judgment that Panther and Coolants argue is preclusive is a default judgment. The bankruptcy court correctly noted that there is precedent for holding that Tennessee courts will apply preclusion principles to default judgments.

> Judgments based on default in Tennessee are given collateral estoppel effect if they satisfy the "actually litigated" requirement addressed in Section III.B.1, supra. *Anderson*, 2014 WL 98691 at *6–8 (an extensive analysis of this issue); *see also Roberts v. Vaughn*, Case No. W2008-01126-COA-R3-CV, 2009 WL 1608981 *4 (Tenn. Ct. App. June 10, 2009) ("**A default judgment is a judgment on the merits for the purposes of res judicata.**"). Couch's own case law recognizes that a default judgment counts as "actually litigated" in Tennessee for all well-pleaded allegations that are deemed admitted upon entry of the default. *Bennett*, 517 B.R. at 101–102 (citing *Rally Hill Prods., Inc. v. Bursack (In re Bursack)*, 65 F.3d 51, 54 (6th Cir.1995)).

*Couch*, 544 B.R. at 876–77 (emphasis added).

While Tennessee state courts have not specifically held that a penalty default judgment has preclusive effect, bankruptcy courts have held that they would do so based upon the fact that Tennessee state courts do give preclusive effect to "true" default judgments. *See Bennett*, 517 B.R. at 101. Moreover, the Bankruptcy Appellate Panel has affirmed such a determination in the case of *Anderson v. Fisher (In re Anderson)*, 520 B.R. 89, 94–95 (B.A.P. 6th Cir. 2014):

> Tennessee state courts have yet to decide whether, as here, a penalty default judgment should also be afforded collateral estoppel effect in a subsequent proceeding. However, Tennessee state courts would give preclusive effect to a "true" default judgment in which the Defendant failed to answer. *Lawhorn v. Wellford*, 179 Tenn. 625, 168 S.W.2d 790, 792 (1943). *See also White v. Rogers (In re Rogers)*, 57 F.3d 1070, 1995 WL 364154 (6th Cir. 1995); *Brown v. Ausley (In re Ausley)*, 507 B.R. 234, 242 (Bankr. W.D. Tenn. 2014); *Stephens v. Morrison (In re Morrison)*, 450 B.R. 734, 754 (Bankr. W.D. Tenn. 2011). . . . Accordingly, the Panel finds that the default judgment is entitled to preclusive effect.

*Anderson*, 520 B.R. at 94–95. The *Anderson* Panel relied on a Sixth Circuit case with similar facts:

> The facts of this case most closely resemble the facts of *Rally Hill Productions, Inc. v. Bursack (In re Bursack)*, 65 F.3d 51 (6th Cir. 1995). In that case, Bursack filed an answer to a complaint in Tennessee state court that alleged he had made false representations and submitted false financial statements to the plaintiff upon which the plaintiff relied in loaning money. *Id*. at 52. Bursack answered, asserted cross-claims against the plaintiff, and attended two depositions. When Bursack failed to appear at trial, the state court entered a default judgment against him. In a subsequent dischargeability action, the bankruptcy court entered summary judgment in favor of the judgment creditor. On appeal, the Sixth Circuit Court of Appeals concluded that the default judgment in *Bursack* differed from a "true" default judgment of the type discussed in [Spilman v. Harley, 656 F.2d 224 (6th Cir. 1981),] because the issues were "actually litigated to the extent that Bursack retained an attorney, filed an answer, asserted cross-claims, and participated in discovery, which included his submitting to two depositions. . . . His strategic decision not to appear at the trial does not undo his earlier active participation in the litigation." *Id*. at 54. Like Bursack, the Debtors retained an attorney, filed an answer, and participated in the discovery process to the extent that their repeated failures to respond properly resulted in the penalty default judgment. The fraud issues in this case, like those of *Bursack*, were necessary to the outcome of the State Court Judgment and were, therefore, actually litigated. Subsequent to *Bursack*, the Sixth Circuit's [Bay Area Factors v. Calvert (In re Calvert), 105 F.3d 315 (6th Cir. 1997)] decision applied the Full Faith and Credit Statute and collateral estoppel to give preclusive effect to a California state court "true"

default judgment. Tennessee state courts also give preclusive effect to "true" default judgments. Following *Bursack* and *Calvert*, it appears that the Debtors' participation in the Tennessee state court lawsuit make it even more likely that a Tennessee state court would give preclusive effect to the penalty default judgment in this case.

*Anderson*, 520 B.R. at 95.

> In Tennessee, "[f]or an issue to be 'actually litigated' for the purpose of applying the doctrine of collateral estoppel, it must have been 'properly raised, by the pleadings or otherwise, and . . . submitted for determination, and . . . determined.'" *Mullins v. State*, 294 S.W.3d at 535 (quoting Restatement (Second) of Judgments § 27 cmt. d.). An issue can be "actually litigated" as long as it was "properly raised by the pleadings or otherwise placed in issue and was actually determined in the prior proceeding." *Id.*

*Bennett*, 517 B.R. at 101.

The present case is factually very similar to *Bursack* and *Anderson*. Couch actively participated in the state court action prior to the default. He filed an answer and counterclaims. The default judgment was entered due to his failure to respond to discovery. The finding that the debt resulted from fraud and was willful and malicious was "put into issue" by the complaint and decided by the state court. Moreover, the state court held an evidentiary hearing prior to entry of the judgment. Accordingly, the issues were in fact actually litigated and decided on the merits. The bankruptcy court's conclusion that this element was proven is not erroneous.

## B. "Full and Fair Opportunity to Litigate"

The bankruptcy court also considered Couch's argument that he did not have a full and fair opportunity to litigate. The bankruptcy court stated:

> The full and fair opportunity to participate in the issues decided in the prior action is also part of the "actually litigated" analysis. In *Anderson*, the defendants [sic] "considerable participation" in the state court action led to a conclusion the issues were actually litigated. 2014 WL 98691 at *8. The defendants hired an attorney, filed an answer and counter-complaint against the state court plaintiffs, and then refused to obey court orders regarding discovery. *Id*.

*Couch*, 544 B.R. at 876–77. However, the Tennessee Supreme Court has explained:

> The "actually litigated" requirement and the "opportunity to litigate" requirement sound similar, but they are not. The former focuses on the issues, while the latter focuses on the affected parties. *Sartin v. Macik*, 535 F.3d 284, 290 (4th Cir. 2008). The "full and fair opportunity to litigate" requirement rests on considerations of fundamental fairness. Applying collateral estoppel in circumstances where the party sought to be precluded did not have a full and fair opportunity to litigate the precluded issue offends due process. *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971); Restatement (Second) of Judgments § 29 cmt. b. "Redetermination of issues is warranted if there is reason to doubt the quality, extensiveness, or fairness of procedures followed in prior litigation." *Kremer v. Chem. Constr. Corp.*, 456 U.S. at 481, 102 S. Ct. 1883 (quoting *Montana v. United States*, 440 U.S. 147, 164 n.11, 99 S. Ct. 970, 59 L. Ed. 2d 210 (1979)).

> The courts have not devised a precise definition of what constitutes the sort of "full and fair opportunity to litigate" that will support the invocation of the doctrine of collateral estoppel. *See Warren v. McCall*, 709 F.2d 1183, 1186 n.7 (7th Cir.1983). As a general matter, courts have required that when the party against whom collateral estoppel is asserted was the defendant in the earlier proceeding, the party must have had notice of the claim and an opportunity to be heard. *Kremer v. Chem. Constr. Corp.*, 456 U.S. at 480–81, 102 S. Ct. 1883; *Murray v. Feight*, 741 P.2d 1148, 1154 (Alaska 1987) (requiring "a fair opportunity procedurally, substantively, and evidentially") (quoting *Overseas Motors, Inc. v. Import Motors Ltd.*, 375 F. Supp. 499, 516 (E.D. Mich. 1974)).

*Mullins v. State*, 294 S.W.3d 529, 538–39 (Tenn. 2009) (footnotes omitted). Accordingly, the bankruptcy court's analysis of the "full and fair opportunity to litigate" is not fully on point with the Supreme Court of Tennessee's analysis of that element.

Couch and his wife filed a joint affidavit as a response to the motion for summary judgment in the bankruptcy court in which they set forth facts that they assert show that Couch did not have a full and fair opportunity to litigate the issues. Couch asserts that he did not receive notice from the court, his attorney or the plaintiffs regarding the discovery deadlines and subsequent default. He further asserts that his former attorney did not try to communicate with him prior to the attorney's withdrawal. Couch also asserts that Panther "knew" that they had moved back to their former residence in London, Kentucky ("Little Laurel Road Address") and that Panther deliberately did not provide him with notice to the Little Laurel Road Address in order to obtain the default judgment. Moreover, Couch asserts that the reason he did not

independently monitor the status of the state court litigation was because his former attorney had erroneously informed him that the case had been settled and dismissed.

On appeal, Couch argues that the bankruptcy court should have accepted these assertions in his affidavit as true for the purposes of summary judgment, and that the bankruptcy court therefore failed to apply the appropriate standard for summary judgment. However, the Panel concludes that the bankruptcy court correctly determined that, even if true, these facts would not change the outcome of the case.

> "[A] full and fair opportunity to litigate entails . . . the procedural requirements of due process." *Kremer v. Chem. Constr. Corp.*, 456 U.S. 461, 483 n.24, 102 S. Ct. 1883, 72 L.Ed.2d 262 (1982). The court's "sense of justice and equity," not an "automatic formula," guides proper rulings on estoppel pleas. *Blonder-Tongue Labs., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 334, 91 S. Ct. 1434, 28 L. Ed. 2d 788 (1971).

*In re Leonard*, 644 F. App'x 612, 618 (6th Cir. 2016).

Couch was aware of and participated in the litigation prior to discovery. Couch's affidavit does not assert that he changed his address of record in the state court litigation after he moved, but rather vaguely asserts that Panther "knew" he had moved and should have served him at different address than the one listed. As the bankruptcy court noted, Couch has offered no legal support for the concept that he is entitled to service at any address other than his address of record.

> Couch also places blame on the Plaintiffs because they served Couch at his last known address used in the Tennessee state court filings after his counsel withdrew. Service at a party's last known address is appropriate under Tennessee law. "Service upon the attorney or upon a party shall be made by delivering to him or her a copy of the document to be served, or by mailing it to such person's last known address, or if no address is known, by leaving the copy with the clerk of the court." Tenn. R. Civ. P. 5.02(1); *see also Reynolds v. Battles*, 108 S.W.3d 249, 251 (Tenn. Ct. App. 2009) ("If a litigant proceeding *pro se* relocates during the course of litigation, he is encumbered with the responsibility of notifying the clerk of the court of his new address."). Couch cites no law, and nothing was found, that would require the Plaintiffs to expand service as he desires.

*In re Couch*, 544 B.R. 867, 877 (Bankr. E.D. Ky. 2016).

Couch also asserts that the reason he did not monitor the state court litigation is that his former attorney had misinformed him that the state case was dismissed. The bankruptcy court correctly rejected this excuse by noting:

> The *Pioneer* Court reaffirmed what amounts to an agency- and choice-based rule of imputation, as first explained by the Court in *Link v. Wabash R.R. Co.*, 370 U.S. 626, 82 S. Ct. 1386, 8 L.Ed.2d 734 (1962):
>
> > Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have notice of all facts, notice of which can be charged upon the attorney.
>
> *Id.* at 633–34, 82 S. Ct. 1386 (quotation marks omitted).

*Nafziger v. McDermott Int'l, Inc.*, 467 F.3d 514, 524 (6th Cir. 2006).

In the present case Couch had actual notice of the litigation and did participate for a period of time. His argument that his counsel misinformed him of a settlement, thus creating the scenario which lead to the default judgment, does not indicate a lack of due process, but rather, a possibility of malpractice. Couch had a full and fair opportunity to litigate the fraud issues and the willful and malicious findings. Accordingly, the bankruptcy court did not err in concluding that collateral estoppel was applicable.

## CONCLUSION

For the reasons stated, the bankruptcy court's order granting summary judgment is AFFIRMED.