**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

---

**No. 22-1505**

---

HALSCOTT MEGARO, P.A.,

        Plaintiff - Appellant,

    v.

HENRY MCCOLLUM; LEON BROWN; RAYMOND TARLTON, as guardian for
Henry McCollum and individually; DUANE GILLIAM, as guardian for Leon
Brown; KIMBERLY PINCHBECK, as guardian for the estate of Henry McCollum
and individually,

        Defendants - Appellees.

---

Appeal from the United States District Court for the Eastern District of North Carolina, at
Raleigh. Terrence W. Boyle, District Judge. (5:21−cv−00478−BO)

---

Argued:  January 25, 2023               Decided:  April 18, 2023

---

Before RICHARDSON, QUATTLEBAUM, and HEYTENS, Circuit Judges.

---

Affirmed in part, dismissed in part by published opinion. Judge Quattlebaum wrote the
opinion, in which Judge Richardson and Judge Heytens concur.

---

**ARGUED:** Jaime Torre Halscott, HALSCOTT MEGARO, PA, Winter Park, Florida, for
Appellant. Matthew J. Higgins, HOGAN LOVELLS US LLP, Washington, D.C., for
Appellees. **ON BRIEF:** Elliot S. Abrams, CHESHIRE PARKER SCHNEIDER, PLLC,
Raleigh, North Carolina; Liz Lockwood, ALI & LOCKWOOD LLP, Washington, D.C.;
Catherine E. Stetson, E. Desmond Hogan, W. David Maxwell, Eric S. Roytman, HOGAN

LOVELLS US LLP, Washington, D.C., for Appellees.

_____

QUATTLEBAUM, Circuit Judge:

Law firm Halscott Megaro, P.A., ("Halscott Megaro" or "the firm") sued former clients Henry McCollum, Leon Brown and their guardians (collectively "former clients"), seeking to recover unpaid legal fees and expenses. A district court dismissed the action under Federal Rule of Civil Procedure 12(b)(6). In reaching that decision, the district court took judicial notice of a North Carolina State Bar Disciplinary Hearing Commission ("Commission") decision that found the firm's lead partner misled McCollum and Brown into retaining the firm and engaged in other unethical conduct. The court then held the firm was precluded from relitigating issues decided by the Commission. And based on the Commission's decision, it held that Halscott Megaro failed to plausibly plead claims for which relief could be granted.

Halscott Megaro appeals, arguing the district court improperly considered matters outside the pleadings—namely, the Commission's decision—and failed to accept its allegations and all reasonable inferences from them as true in concluding that the Commission's decision as to its lead partner bound the law firm. The firm also argues that the district court abused its discretion in denying its motion for recusal. We disagree. The district court committed no reversible error in granting the former clients' motion to dismiss or in denying the law firm's motion for recusal. So we affirm.

I.

After intellectually disabled brothers Henry McCollum and Leon Brown served 31 years in prison for the rape and murder of an 11-year-old girl, the North Carolina Innocence

3

Inquiry Commission tested DNA on a cigarette found at the crime scene. The DNA matched a serial rapist and murderer who lived close to where the girl's body was found. Based on these test results, and following a motion for appropriate relief, the Robeson County Superior Court vacated McCollum and Brown's sentences.

McCollum and Brown then pursued several legal proceedings based on their wrongful convictions. They sought and received pardons for their convictions. They also petitioned for monetary awards permitted by North Carolina statute and received the maximum statutory amount. And they sued the Town of Red Springs, Robeson County, and the state of North Carolina for violating their civil rights, ultimately leading to a $75,000,000 jury verdict.[1]

This appeal involves a dispute between McCollum and Brown and the law firm Halscott Megaro, which represented McCollum and Brown. Halscott Megaro claims it helped McCollum and Brown obtain their pardons and statutory monetary awards. And it contends it negotiated a $1,000,000 settlement with the Town of Red Springs in the civil rights case.[2] Finally, it claims it expended substantial hours and incurred significant costs in working that case until the firm was replaced by new counsel by the time of trial.

Halscott Megaro sued McCollum and Brown as well as Raymond Tarlton, McCollum's guardian; Duane Gilliam, Leon Brown's guardian; and Kimberly Pinchbeck,

---

[1] We discussed the brothers' convictions and post-relief efforts in considering an appeal related to this verdict. *Gilliam v. Allen*, No. 21-2313, 2023 WL 2395416 (4th Cir. Mar. 8, 2023).

[2] The Town of Red Springs settled with McCollum and Brown, and the referenced $75,000,000 jury verdict was with respect to other defendants that remained in the case.

4

the guardian for McCollum's estate in the circuit court in Orange County, Florida. Halscott Megaro alleged the guardians replaced the firm with new lawyers but failed to pay for any of the work the firm did or the expenses it incurred in the civil rights case.

In its state court complaint, Halscott Megaro alleged that McCollum, Brown and their sister Geraldine Brown Ransom—who the firm alleged to be the brothers' "attorney-in-fact"—asked Halscott Megaro to represent them. Halscott Megaro alleged that Michael Megaro, "as partner for Plaintiff law firm," met with McCollum, Brown and Ransom regarding representation. J.A. 51. During the meeting, they signed a "retainer agreement," which outlined a contingency fee arrangement and the duties to be performed by the firm. J.A. 52. Halscott Megaro then represented McCollum and Brown in seeking: (1) pardons of actual innocence with the Office of the Governor of North Carolina; (2) statutory compensation for wrongful convictions through North Carolina's Industrial Commission; and (3) damages for being wrongfully imprisoned in a 42 U.S.C. § 1983 civil rights action. Halscott Megaro alleged that it succeeded in obtaining pardons and the maximum statutory amounts of $750,000 each to McCollum and Brown for their wrongful convictions.

According to Halscott Megaro, shortly after securing the pardons and the statutory amounts for wrongful convictions, Megaro decided that Brown needed a guardian. So, he petitioned a North Carolina state court for one to be appointed. That court appointed Ransom as guardian. But later, the state court replaced her with Duane Gilliam because Ransom was mismanaging funds. Also, Halscott Megaro alleged that during the civil rights action, the district court appointed Raymond Tarlton as guardian ad litem for McCollum.

Tarlton then brought in Kimberly Pinchbeck as guardian of McCollum's estate. The firm alleges that later, McCollum and Brown replaced Halscott Megaro with different lawyers.

Halscott Megaro's complaint asserted a breach of contract claim against Brown and his guardian, Gilliam,[3] and quantum meruit and unjust enrichment claims against McCollum and Brown along with their guardians, Gilliam, Tarlton and Pinchbeck. Alleging diversity jurisdiction, the former clients removed the case to the United States District Court for the Middle District of Florida. The Middle District of Florida then granted their motion to transfer the case to the Eastern District of North Carolina where McCollum and Brown reside, where the parties executed the retainer agreement and where McCollum and Brown filed their underlying federal civil rights action. The Clerk of Court reassigned the transferred case to Judge Terrence Boyle, the district court judge who presided over the civil rights action.

Once the case was before Judge Boyle, the former clients moved to dismiss Halscott Megaro's suit. In their motion to dismiss, the former clients argued that the district court should take judicial notice of the Commission's decision, that Halscott Megaro was bound by the decision since it was in privity with Megaro, and that Halscott Megaro was collaterally estopped from claiming breach of the retainer agreement. They also argued that the Commission's findings as to Megaro's ethical violations barred the firm's equitable claims based upon the doctrines of unclean hands and laches.

---

[3] The firm did not assert a breach of contract claim as to McCollum or his guardians. This may be because the district court found the retainer agreement unenforceable as to McCollum in the civil rights action.

6

The Commission's decision, issued after a five-day evidentiary hearing where Megaro was represented by counsel, contained an order of discipline and factual findings. The Commission noted that "[m]inimal research on the cases of McCollum and Brown would have disclosed their significant intellectual disabilities." J.A. 28. It added that Megaro entered into the representation agreement with them and their sister Ransom, despite knowledge of the brothers' diagnoses and low IQ scores. That agreement reflected that Megaro would collect a contingency fee of between 27-33% of any monetary recovery or award, and the Commission determined that it ultimately "created an impermissible nonrefundable fee." J.A. 29.

Additionally, the Commission found that Megaro "performed minimal work on behalf of McCollum and Brown" to obtain their statutory monetary awards. J.A. 31. Yet, Megaro took a one-third fee from the awards of both McCollum and Brown, repaid high-interest loans he facilitated for them and charged other costs, expenses and repayments. And with respect to the settlement with the Town of Red Springs, the Commission noted that Megaro sought even more fees. The Commission explained that, in the district court's consideration of a motion to approve that settlement, the presiding district court judge in the civil rights action found that McCollum was not competent to manage his own affairs and that Megaro's "representation agreement with McCollum was invalid due to McCollum's incompetency." J.A. 38. The Commission found that "McCollum and Brown did not have the capacity to enter into representation agreements with" Megaro. J.A. 39.

The Commission determined that by "entering into a representation agreement with his clients when he knew they did not have the capacity to understand," Megaro's conduct

7

was deceitful, fraudulent and dishonest and violated the North Carolina Rules of Professional Conduct. J.A. 40. The Commission issued a judgment and a disciplinary order, which suspended Megaro's license to practice in the state of North Carolina for five years and required him to pay restitution if he wanted to be reinstated at the end of that time period.

Halscott Megaro opposed the motion to dismiss and also moved for the district court judge's recusal, arguing that he was biased. J.A. 311. The district court denied that motion, noting Halscott Megaro identified no basis suggesting that a fair judgment would be impossible. The district court then dismissed the firm's complaint, ruling it was precluded from arguing that the retainer agreement was valid after the Commission had determined that it was not. And it dismissed the firm's unjust enrichment and quantum meruit claims, reasoning they were barred under the doctrines of unclean hands and laches based on the Commission's findings on Megaro's unethical conduct.

Halscott Megaro timely appealed, and we have jurisdiction pursuant to 28 U.S.C. § 1291.

## II.

We begin with our standard of review. We review the district court's ruling on a motion to dismiss under Rule 12(b)(6) de novo. *Harvey v. Cable News Network, Inc.*, 48 F.4th 257, 268 (4th Cir. 2022). In doing so, we must determine whether the complaint alleges sufficient facts "to raise a right to relief above the speculative level" and "to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly,* 550 U.S. 544, 555,

570 (2007). Generally, our review is limited to the well-pled facts in the complaint viewed in the light most favorable to the plaintiff. "A motion to dismiss under Rule 12(b)(6) tests the sufficiency of a complaint; importantly, it does not resolve contests surrounding the facts, the merits of a claim, or the applicability of defenses." *Republican Party of N. Carolina v. Martin*, 980 F.2d 943, 952 (4th Cir. 1992) (citation omitted); *Goldfarb v. Mayor & City Council of Baltimore*, 791 F.3d 500, 508–12 (4th Cir. 2015) (a motion to dismiss under Rule 12(b)(6) does not typically resolve the applicability of defenses to a well-pled claim). But affirmative defenses can be considered in resolving Rule 12(b)(6) motions when the facts surrounding the defense are clear from the complaint. *Richmond, Fredericksburg & Potomac R. Co. v. Forst*, 4 F.3d 244, 250 (4th Cir. 1993).

Courts are limited to considering the sufficiency of the allegations set forth in the complaint and the "documents attached or incorporated into the complaint." *E.I. du Pont de Nemours & Co. v. Kolon Indus., Inc.,* 637 F.3d 435, 448 (4th Cir. 2011) (citation omitted). Under Rule 12(d), if matters "outside the pleadings are presented to and not excluded by the court [for a Rule 12(b)(6) motion], the motion must be treated as one for summary judgment under Rule 56." Fed. R. Civ. P. 12(d). And it is not appropriate for the court to convert a motion to dismiss into a motion for summary judgment "when the parties have not had an opportunity to conduct reasonable discovery." *Zak v. Chelsea Therapeutics Int'l, Ltd.*, 780 F.3d 597, 606 (4th Cir. 2015). Although the evaluation is generally limited to a review of the allegations of the complaint itself, and documents attached to the complaint as exhibits, a court may properly take judicial notice of matters of public record without converting a motion to dismiss into a motion for summary judgment. *Philips v.*

9

*Pitt Cnty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009); *see also Goldfarb*, 791 F.3d at 506.

## III.

Halscott Megaro argues that the district court erred in granting the motion to dismiss by improperly considering matters outside the four corners of the complaint—namely, the Commission's decision. The firm insists this effectively converted a Rule 12(b)(6) motion to dismiss into a Rule 56 motion for summary judgment. It also argues that the court resolved disputed issues of material fact in favor of its former clients.

Halscott Megaro's arguments raise three primary issues. First, is the Commission's decision an appropriate matter of public record for which the district court could take judicial notice, and does it have preclusive effect against Megaro? If so, under North Carolina preclusion law, is the firm in privity with Megaro such that it was precluded from re-arguing issues resolved against Megaro by the Commission? And finally, do the complaint and the Commission's decision clearly establish that the firm's equitable claims are barred by the doctrines of unclean hands and laches? We consider these questions in turn.

## A.

First, we consider whether the Commission's decision was an appropriate matter of public record for the district court to have considered by judicial notice. As noted above, a court may take judicial notice of "matters of public record" and other information that would constitute adjudicative facts under Federal Rule of Evidence 201. *Goldfarb*, 791

F.3d at 508. And an appellate court can take judicial notice of the same facts as could the district court. *Id.* at 509.

The Commission's decision on Megaro is a publicly available record. *See Hall v. Virginia*, 385 F.3d 421, 424 n.3 (4th Cir. 2004) (recognizing that voting statistics were available on the state's official website). It is also an administrative decision from a body acting in a judicial capacity. In North Carolina, the Bar is an agency of the state of North Carolina. N.C. Gen. Stat. § 84-15. The Commission is an independent subsection of the Bar which may "hold hearings in discipline, incapacity and disability matters, make findings of fact and conclusions of law after these hearings, enter orders necessary to carry out the duties delegated to it by the Council, and tax the costs to an attorney who is disciplined or is found to be incapacitated or disabled." N.C. Gen. Stat. Ann. § 84-28.1(b). Further, either party may appeal a final order of the Commission to the North Carolina Court of Appeals. N.C. Gen. Stat. Ann. § 84-28(h); *see also Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 432 (1982) (recognizing that state bar disciplinary proceedings can constitute ongoing state judicial proceedings).

The Commission here acted in a judicial capacity. It held a five-day hearing. Megaro was represented by counsel. Evidence was introduced. And after an adverse decision, Megaro appealed to the North Carolina Court of Appeals. The North Carolina Court of Appeals affirmed the Commission's order, concluding that the order's "findings of fact support the conclusion that [Megaro] knew McCollum and Brown did not have the capacity to understand the representation agreement or settlement agreement." *N. Carolina State Bar v. Megaro*, 880 S.E.2d 401, 409 (N.C. Ct. App. 2022).

11

The district court did not have the benefit of the North Carolina Court of Appeals order which was issued after the district court's opinion; therefore, it could not unequivocally state the Commission's decision had been judicially reviewed. However, it correctly applied the governing test from *University of Tennessee v. Elliott,* 478 U.S. 788 (1986), to determine whether the administrative body was acting in a judicial capacity and whether the state court would give preclusive effect to the administrative decision. *See Davenport v. N. Carolina Dep't of Transp.*, 3 F.3d 89, 93 n.4 (4th Cir. 1993). Under that test, federal courts are directed to give preclusive effect to unreviewed administrative decisions "when a state agency acting in a judicial capacity… resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate." *Hall v. Marion Sch. Dist. No. 2*, 31 F.3d 183, 191 (4th Cir. 1994) (cleaned up) (noting that federal courts must give the agency's factfinding the same preclusive effect to which it would be entitled in the state's courts).We agree with the district court's conclusion that the Commission was acting in a judicial capacity when it entered its discipline order against Megaro such that a state court would give preclusive effect to the administrative decision. We also agree that he received a full and fair opportunity to litigate the issues and due process protections.

But the existence of the North Carolina Court of Appeals order changes the analysis slightly for us. We do not have to assume what credit a state court would give the administrative decision because a state court has now issued a judgment. "Federal courts must give the same preclusive effect to a state court judgment as the forum that rendered the judgment would have given it" under the Full Faith and Credit Act, 28 U.S.C.

12

§ 1738. *Sartin v. Macik*, 535 F.3d 284, 287 (4th Cir. 2008); *Davenport*, 3 F.3d at 93 n.4 (4th Cir. 1993) ("28 U.S.C. § 1738 requires application of state preclusion law only where, as here, the state administrative decision has been judicially reviewed; the statute reaches only state judicial judgments."). And since we review the district court's order de novo, there no longer seems to be any question about whether the Commission's decision is proper to consider. We must consider the potential preclusive effect of the North Carolina state court's judgment, which affirmed the Commission's decision, as it relates to Megaro. And doing so, we must recognize that North Carolina has found that Megaro knew that McCollum and Brown lacked the capacity to understand the representation agreement and that the contract they signed was unenforceable as to them.

## B.

Second, we consider whether the state court judgment against Megaro and the allegations in the complaint clearly establish that the firm was in privity with Megaro such that the firm is precluded from seeking to enforce the retainer agreement just as Megaro would. To do that, we apply North Carolina law.[4] *Sartin*, 535 F.3d at 287 (applying North Carolina law to determine the preclusive effect of a default judgment). And this issue involves two questions. One, what are the parameters of North Carolina preclusion law?

---

[4] A federal court sitting in diversity applies the substantive law of the state in which it sits. *Volvo Const. Equip. N Am., Inc. v. CLM Equip. Co., Inc.,* 386 F.3d 581, 599-600 (4th Cir. 2004). The transferee court also applies the law of the state in which it sits. *LaVay Corp. v. Dominion Fed. Sav. & Loan Ass'n,* 830 F.2d 522, 526 (4th Cir. 1987). Accordingly, we continue the application of North Carolina substantive law.

13

And two, would North Carolina's privity doctrine extend the preclusive effect to Halscott Megaro?

1.

The preclusion doctrine—including that of North Carolina—consists of both res judicata and collateral estoppel. *Sartin*, 535 F.3d at 287. This appeal involves collateral estoppel. That doctrine bars the re-litigation of specific issues that were actually determined in a prior action. *Id.* Under North Carolina law, "the determination of an issue in a prior judicial or administrative proceeding precludes the relitigation of that issue in a later action, provided the party against whom the estoppel is asserted enjoyed a full and fair opportunity to litigate that issue in the earlier proceeding." *Whitacre P'ship v. Biosignia, Inc.*, 591 S.E.2d 870, 880 (N.C. 2004). Thus, collateral estoppel bars litigation of claims where (1) the issues are the same as those involved in the prior action; (2) the issues have been raised and actually litigated in the prior action; (3) the issues were material and relevant to the disposition of the prior action and (4) the determination of the issues in the prior action was necessary and essential to the resulting judgment. *Sykes v. Blue Cross & Blue Shield of N. Carolina*, 828 S.E.2d 489, 494 (N.C. 2019).

Like the district court, we have no trouble concluding that the Commission's decision meets these requirements. Megaro and the North Carolina State Bar actually litigated the question of whether the retainer agreement that Megaro signed on behalf of the firm constituted an unenforceable contract. Further, the facts that led to the Commission's decision that the retainer agreement was invalid—McCollum and Brown's limited intellectual capacity, Megaro's knowledge of those limitations and his decision to

14

manipulate them into signing the agreement—were material, relevant and essential to the Commission's findings of unethical conduct by Megaro.

2.

But there is a wrinkle here. Megaro, individually, was the party in the North Carolina disciplinary proceeding, not Halscott Megaro, the firm. So, is the firm bound by the order? Answering that question involves the doctrine of privity.

North Carolina courts have consistently held that where a party would be collaterally estopped, a person in privity with that party is also estopped. *Whitacre P'ship*, 591 S.E.2d at 893; *see also Sykes*, 828 S.E.2d at 494 ("Collateral estoppel precludes parties and parties in privity with them from retrying fully litigated issues that were decided in any prior determination and were necessary to the prior determination.") (cleaned up). In other words, when parties are in privity, "courts will look beyond the nominal party whose name appears on the record as plaintiff and consider the legal questions raised as they may affect the real party or parties in interest." *Whitacre P'ship*, 591 S.E.2d at 893 (internal citation and quotation marks omitted). In the context of collateral estoppel, privity "denotes a mutual or successive relationship to the same rights of property." *Id.* (internal citation and quotation marks omitted).

The district court held that Megaro was in privity with his law firm for the issues discussed in the Commission's decision. In reaching this decision, the court first identified the "mutual or successive relationship to the same rights of property" test for privity. J.A. 319 (quoting *State ex rel. Tucker v. Frinzi*, 474 S.E.2d 127, 128 (N.C. 1996)). The court then relied on the allegations in the complaint that Megaro is a partner of the law firm and,

15

on behalf of the firm, met with McCollum and Brown and executed the agreement outlining

duties to be performed by the firm. And it concluded stating "[t]here is no credible

argument that the plaintiff law firm and Megaro are not in privity." J.A. 319.

In challenging this conclusion, Halscott Megaro argues "the Court expends great

efforts to not just establish a privity of Megaro and [the firm], who are undoubtedly separate

entities, but goes further to speak of them interchangeably as if there is no distinction." Op.

Br. at 15. The firm adds that

> [t]he District Court makes a legal finding of privity with Megaro and [the
> firm], which would require a factual determination that it did not perform
> and that it cannot rely on the [Commission] having performed. There is no
> analysis of which acts in the North Carolina State Bar order of discipline
> apply to Megaro and which apply to Halscott Megaro.

*Id.* at 15.

We disagree. First, the district court did not treat Megaro and the firm as if they

were a single entity. In fact, if it had, there would have been no need to evaluate privity.

And the court identified the correct legal test to analyze that issue. It then noted that Megaro

was a partner in the firm and was acting on behalf of the firm in meeting with McCollum

and Brown about the retainer agreement. So, contrary to Halscott Megaro's argument, the

district court applied the proper legal test to undisputed facts, which it gleaned from the

complaint and the Commission's decision. Halscott Megaro's argument to the contrary

simply misconstrues the district court's decision. Because the Commission and the Court

of Appeals found that the retainer agreement was invalid, there is no valid contract upon

which to support a breach of contract cause of action. Accordingly, we affirm the district

16

court's granting of the motion to dismiss the breach of contract claims brought against Brown and his guardian.

C.

Third, we consider the district court's dismissal of Halscott Megaro's claims for unjust enrichment and quantum meruit based on the doctrines of unclean hands and laches. Under North Carolina law, "unjust enrichment is a claim in quasi contract or a contract implied in law." *Butler v. Butler*, 768 S.E.2d 332, 336 (N.C. Ct. App. 2015) (internal citation and quotation marks omitted). To establish unjust enrichment, a party must show "(1) a measurable benefit was conferred on the defendant, (2) the defendant consciously accepted that benefit, and (3) the benefit was not conferred officiously or gratuitously." *Primerica Life Ins. Co. v. James Massengill & Sons Const. Co.*, 712 S.E.2d 670, 677 (N.C. Ct. App. 2011) (citing *Progressive Am. Ins. Co. v. State Farm Mut. Auto Ins. Co.*, 647 S.E.2d 111, 116 (N.C. Ct. App. 2007)). And quantum meruit "is a measure of recovery for the reasonable value of services rendered in order to prevent unjust enrichment." *Whitfield v. Gilchrist*, 497 S.E.2d 412, 414 (N.C. 1998). Relevant here, "an attorney who has provided legal service pursuant to a contingency fee agreement and [was] fired has a viable claim in North Carolina in quantum meruit against the former client or its subsequent representative." *Guess v. Parrott*, 585 S.E.2d 464, 468 (N.C. Ct. App. 2003).

Halscott Megaro bases its claim for unjust enrichment and quantum meruit on the services the firm provided to McCollum and Brown. The firm alleges that the "parties were operating on a quantum meruit basis following a ruling by Judge Terrence Boyle [] that McCollum's fee arrangement contained some language issues and that it needed revision."

17

J.A. 58. And it maintains that "[n]o challenge or invalidation of the signed retainer agreement occurred during the pendency of the underlying civil rights action as it pertained to Brown and Gilliam." J.A. 58. The firm alleges it conferred the benefits of representation and expended significant sums of money in representing McCollum and Brown. And it asserts that its former clients "have made no efforts to pay any fees or costs as contemplated under the signed and ratified retainer agreement, nor under any other legal theory." J.A. 59.

Despite these allegations, the district court, relying largely on the findings and conclusions of law from the Commission's decision, held that the doctrine of unclean hands and laches barred Halscott Megaro's equitable claims. In challenging that decision, Halscott Megaro argues that the district court failed to recognize that the Commission's order actually explained the amount of work Megaro performed for McCollum and Brown.

But we find no error in the district court's analysis. Regardless of any discussion about the amount of work Megaro performed, the Commission concluded that "[b]y entering into a representation agreement with his clients when he knew they did not have the capacity to understand the agreement, [Megaro] engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Rule 8.4(c) and engaged in conduct prejudicial to the administration of justice in violation of Rule 8.4(d)." J.A. 40. The Commission also found that Megaro charged an improper fee by claiming an irrevocable interest in McCollum and Brown's potential financial payments from the civil rights action. And the Commission determined that collecting one-third of the North Carolina statutory award for McCollum and Brown's wrongful convictions was an

18

excessive fee in violation of the North Carolina Rules of Professional Conduct since most of the work had been done before the firm was even involved. *See* N.C. Rule of Professional Conduct 1.5(a).

In North Carolina, the "clean hands doctrine denies equitable relief only to litigants who have acted in bad faith, or whose conduct has been dishonest, deceitful, fraudulent, unfair, or overreaching in regard to the transaction in controversy." *Collins v. Davis*, 315 S.E.2d 759, 762 (N.C. Ct. App. 1984) (citation omitted). We find no reversible error in the district court's determination that the findings and conclusions of law from the Commission's decision establish that Megaro and by extension his law firm, sought relief from the district court with unclean hands.

What's more, in its decision, the district court cited *Law Offices of Peter H. Priest, PLLC v. Coch*, 780 S.E.2d 163, 164–65 (N.C. Ct. App. 2015). There, a law firm and its principal attorney sued their clients for breach of contract and other equitable claims. The North Carolina Court of Appeals held that former clients could use the law firm's violation of the North Carolina Rules of Professional Conduct to avoid liability to the firm. *Id.* at 172. It reasoned "that an attorney's failure to comply with the Rules of Professional Conduct can indeed function as a bar to recovery in a subsequent action for attorney fees." *Id.* at 172. And "although an attorney's violation of the Rules does not give rise to an independent cause of action," neither the case law nor commentary to the Rules of Professional Conduct prohibit "defensive use of such violations against a lawsuit subsequently initiated by the same attorney." *Id. Law Offices of Peter H. Priest*, therefore, supports the district court's decision.

19

Thus, we affirm the dismissal of the firm's equitable claims based on the doctrine of unclean hands. And because we reach this conclusion, we need not discuss the former clients' laches defense.

## IV.

Last, Halscott Megaro also argues that the district court erred in failing to recuse itself from consideration of the case under either 28 U.S.C. § 455, 28 U.S.C. § 144, or Canon 3C (1) of the Code of Conduct for United States Judges.[5] The firm challenged the district court's ability to rule fairly on its case based on what it viewed as the court's negative opinion of Megaro. But the district court considered the applicable law and the firm's affidavit. It then concluded the firm failed to identify an opinion derived from an extrajudicial source or any comment that revealed a high degree of favoritism or antagonism that would make it impossible for the court to render a fair judgment. *See Sine v. Loc. No. 992 Int'l Bhd. of Teamsters*, 882 F.2d 913, 914–15 (4th Cir. 1989). Accordingly,

---

[5] 28 U.S.C. § 455 explains that a judge of the United States shall disqualify himself in any proceeding in which his impartiality may be questioned, and under several other enumerated circumstances, such as "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455. Under 28 U.S.C. § 144, "whenever a party to any proceeding in a district court makes and files a timely and sufficient affidavit that the judge before whom the matter is pending has a personal bias or prejudice either against him or in favor of any adverse party, such judge shall proceed no further therein, but another judge shall be assigned to hear such proceeding." 28 U.S.C. § 144. The affidavit "shall state the facts and the reasons for the belief that bias or prejudice exists, and shall be filed not less than ten days before the beginning of the term at which the proceeding is to be heard, or good cause shall be shown for failure to file it within such time." *Id.* Similarly, Canon 3(C)(1) calls for a judge to disqualify him or herself in a proceeding in which the judge's impartiality might reasonably be questioned.

20

the court held that Halscott Megaro failed to identify any facts which would cause one to reasonably question the court's impartiality.

We review a district court's denial of a motion for recusal for abuse of discretion. *Kolon Indus. Inc. v. E.I. DuPont de Nemours & Co.*, 748 F.3d 160, 167 (4th Cir. 2014). We find none here. The firm's allegations of impartiality were not related to any particular facts, sources or statements. A presiding judge is not required to recuse himself simply because of unsupported or highly tenuous speculation. *See United States v. Cherry*, 330 F.3d 658, 665 (4th Cir. 2003). So, we affirm the district court's denial of Halscott Megaro's motion to recuse.

V.

For the reasons set forth above, we affirm the district court's dismissal of Halscott Megaro's action and dismiss the appeal in part for lack of jurisdiction.[6]

*AFFIRMED IN PART, DISMISSED IN PART*

---

[6] Halscott Megaro also challenges the order from a district court for the Middle District of Florida transferring venue to the Eastern District of North Carolina. At oral argument, Halscott Megaro admitted that the argument was improper. And because we lack jurisdiction to review the order of the district court for the Middle District of Florida, we dismiss that portion of the appeal. *Brock v. Entre Computer Centers, Inc.*, 933 F.2d 1253, 1257 (4th Cir. 1991) ("This court has held that we have no jurisdiction to review a decision to transfer venue rendered by a district court in another circuit.").