**PUBLISHED**

UNITED STATES COURT OF APPEALS
FOR THE FOURTH CIRCUIT

No. 24-2047

DYANIE BERMEO,

Plaintiff - Appellant,

v.

BLAKE ANDIS, Sheriff; JAMIE BLEVINS, Captain; SCOTT ADKINS, Detective;
BRAD ROOP, Detective,

Defendants - Appellees.

Appeal from the United States District Court for the Western District of Virginia, at
Abingdon.  Michael F. Urbanski, Senior District Judge.  (1:23-cv-00041-MFU-CKM)

Argued:  October 21, 2025                          Decided:  December 30, 2025

Before KING, WYNN, and QUATTLEBAUM, Circuit Judges.

Vacated and remanded by published opinion.  Judge Quattlebaum wrote the opinion, in
which Judge King and Judge Wynn joined.

**ARGUED:** Melissa Jean Hordichuk, ACCESS TO JUSTICE PROJECT, INC., Charlotte,
North Carolina, for Appellant. Nathan Henry Schnetzler, FRITH, ANDERSON & PEAKE,
PC, Roanoke, Virginia, for Appellees. **ON BRIEF:** Alexis I. Tahinci, TAHINCI LAW
FIRM PLLC, Kingsport, Tennessee, for Appellant. Austin Logan Obenshain, FRITH,
ANDERSON & PEAKE, PC, Roanoke, Virginia, for Appellees.

QUATTLEBAUM, Circuit Judge:

Normally, motions to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure are evaluated based strictly on the contents of the complaint and any attachments to it. But *Doriety for Estate of Crenshaw v. Sletten*, 109 F.4th 670 (4th Cir. 2024), recognized a narrow exception to that rule. Courts may consider a recording that blatantly contradicts a complaint's factual allegations so long as the recording is authentic and integral to the allegations in the complaint. This appeal involves that narrow exception.

The district court dismissed Dyanie Bermeo's complaint after finding that an audio recording of law enforcement officials' interview of her contradicted her allegations that those officials coerced her confession and that she felt as though she had no choice but to confess. But the recording did not blatantly contradict Bermeo's factual allegations. So, we vacate the district court's dismissal of Bermeo's complaint and remand so the court can decide whether the complaint, on its face, survives the defendants' motion to dismiss.

## I.

### A.

At 9:30 p.m. on September 29, 2020, Bermeo was driving from her family's home in Charlotte, North Carolina to King University in Bristol, Tennessee, where she was a junior.[1] She was nearly there "when an unmarked vehicle with blue flashing lights" stopped her on Old Jonesboro Road in Abingdon, Virginia. J.A. 16. When Bermeo pulled over, the

---

[1] We describe the facts as they're pled in Bermeo's second amended complaint, which is the operative pleading and which, for convenience, we'll simply refer to as "the complaint."

2

driver of the unmarked vehicle "approached [Bermeo's] window, shined a flashlight in her face, and asked [Bermeo] if she knew how fast she was driving." *Id.* When Bermeo said she didn't, the driver "ordered [Bermeo] to exit the vehicle and threatened to call additional officers for backup if she failed to comply." *Id.* at 16–17. Bermeo stepped out of her vehicle. The driver "spun [Bermeo] around and pinned her hands against the driver's side window of [her] car," at which point he "proceeded to pat [Bermeo] down, touch [Bermeo]'s breasts, and fondle her vagina." *Id.* at 17. The driver then got back into his car and left the scene.

The next day, Bermeo reported her sexual assault to the Washington County Sheriff's Office in Virginia. Detective Scott Adkins asked Bermeo to come to the WCSO station for an interview. During that interview, Bermeo described her assailant.

In the two weeks following the interview, Adkins investigated Bermeo's allegations. He reviewed, among other things, surveillance footage from a house on Old Jonesboro Road—the road where Bermeo alleged she was sexually assaulted. But the footage Adkins collected "was recorded on a different date and time" than the assault. *Id.* at 21. And, at any rate, the video quality "was so poor that it was impossible to identify any of the vehicles that appeared to be driving past the house on the darkly lit street at night." *Id.*

On October 13, 2020, Adkins and Detective Brad Roop asked Bermeo to return to the WCSO station to answer more questions. This time, Adkins and Roop told Bermeo to leave her phone, keys and wallet at the station while they drove her to the crime scene. Bermeo complied. Shortly after they returned and Bermeo collected her belongings and

left the station, she "received a series of four text messages from an unknown number stating: (1) 'They won't find anything'; (2) 'They will not find anything. U should have never gone to police'; (3) 'Just know that I know where U live….where U work… everything… I would reconsider'; and (4) 'Tell the police u changed ur mind and I will leave u alone… if not I won't go for you… just know that.'" *Id.* at 23. When Bermeo told her father about these messages, he "tried calling the number, but it rang back to [Bermeo]'s device." *Id.*

Bermeo called Adkins about these messages. Adkins told Bermeo that he and Roop would drive to campus to see the messages on her phone. When Adkins and Roop arrived, they questioned Bermeo for approximately 24 minutes. They told Bermeo there were "downloadable apps that could be installed" that could have sent the threatening messages Bermeo received. *Id.* at 24. Then, Roop asked Bermeo "if there was any reason why" the surveillance video they had obtained from the Old Jonesboro Road house "would not show a traffic stop." *Id.* (emphasis omitted). Bermeo shook her head, indicating "no." Roop then told Bermeo that he and Adkins had watched the video and had seen Bermeo's vehicle but no vehicle following her. Given that Adkins and Roop had only watched low-quality footage from the wrong date and time, this was untrue. Roop and Adkins told Bermeo "that she was 'digging' her 'hole even deeper,' and that she needed to keep 'quiet' because they did not want to 'embarrass' her." *Id.* at 25. Roop said, "We need you to keep it between us, but we need you to tell us the truth . . . no stop happened here." *Id.* Bermeo "made an audible noise indicating agreement with Roop because [she] did not think that she had any

4

choice but to tell Roop and Adkins what they wanted to hear." *Id.*[2] When Roop asked Bermeo how she had sent herself the threatening messages, Bermeo "parroted back the information Adkins and Roop fed to her," replying that there was an app that would trace back to her phone. *Id.* Bermeo feared that "Roop and Adkins were pressuring her to involuntarily recant her report because they had identified the Assailant as a legitimate law enforcement officer." *Id.* at 26.

Later that day, Roop and Adkins told a King University official that Bermeo had confessed to fabricating her sexual assault allegation. Then, Sheriff Blake Andis ordered Adkins to use Bermeo's confession—"which Andis knew [Bermeo] gave under coercion and false pretenses—as probable cause to obtain a warrant to arrest [her] for knowingly filing a false police report with the intent to mislead law enforcement" under Virginia law. *Id.* at 27.

"On October 15, 2020, Adkins left [Bermeo] a voicemail asking her to come down to the WCSO station so they could close out the case." *Id.* at 28. When Bermeo arrived, "Adkins advised [Bermeo] that she was under arrest for knowingly filing a false police report with the intent to mislead law enforcement." *Id.* Adkins told Bermeo that he didn't want to arrest her but that his "hands were tied" by Andis. *Id.* As Bermeo was being processed, "Adkins used his cell phone to take a separate personal photo of [Bermeo]." *Id.* Around this time, Andis, Adkins, Roop and Captain Jamie Blevins created and issued a "press release to publicize the fact that [Bermeo] had admitted to lying to law enforcement

---

[2] Bermeo's complaint fully capitalizes all of the defendants' names. When we quote from Bermeo's complaint, we only capitalize the first letter of each defendant's name.

about being sexually assaulted." *Id.* at 28–29. The press release included Bermeo's "full name, university, . . . the precise section of Charlotte, North Carolina where she reside[d], and the photo Adkins took of [Bermeo] during her arrest." *Id.* at 29. On October 16, 2020, this release "was circulated to local media and shared on the official WCSO Facebook Page." *Id.* at 30. Social media users sent Bermeo "hundreds of cruel and hurtful messages" after the WCSO issued the press release, including "many telling her to kill herself, that she belongs in jail, and that no one would ever sexually assault someone who looks like" her. *Id.* Following her arrest, Bermeo "suffered from extreme depression and anxiety, feelings of worthlessness and hopelessness" and "post-traumatic stress disorder;" she "was required to seek professional counseling to undergo extensive therapy because her depression and anxiety;" she "could not sleep without having terrifying and panic-inducing nightmares;" and she "lost friendships" and "her part-time job," among other alleged injuries. *Id.* at 34–35.

As for the false reporting charge, Bermeo was initially convicted in a bench trial in Washington County District Court. She appealed her conviction, had the initial conviction annulled, received a de novo bench trial in Washington County Circuit Court and was acquitted of the charges.[3]

---

[3] A defendant convicted in a Virginia district court has "the right . . . to appeal to the circuit court." Va. Code. Ann. § 16.1-132. An appeal from a district court conviction entitles the defendant to "a new trial in the circuit court" and "annul[s] the judgment of the inferior tribunal as completely as if there had been no previous trial." *Santen v. Tunhill*, 578 S.E.2d 788, 790 (Va. 2003) (internal quotation marks and citations omitted).

**B.**

In September 2022, Bermeo sued Andis, Blevins, Adkins and Roop. In her complaint, Bermeo pled nine federal constitutional claims under 42 U.S.C. § 1983 and two Virginia tort claims. Starting with the constitutional claims, Counts I and II allege that Andis and Adkins committed unlawful seizure and malicious prosecution by arresting Bermeo based on a coerced confession. Count III alleges that Adkins and Roop unlawfully extracted that coerced confession in violation of Bermeo's right against self-incrimination. Counts IV and V allege that all the defendants violated Bermeo's privacy and equal protection rights by issuing the press release, a step Bermeo alleges the WCSO didn't take in a similar case approximately nine months later. The constitutional violations Bermeo alleges in her first five counts serve as predicates for her claims in Count VI–IX for failure to intervene, failure to supervise, failure to train and conspiracy to interfere with her civil rights.

The final two counts are the Virginia tort claims. Count X alleges that the defendants intentionally inflicted emotional distress upon Bermeo by coercing her into falsely recanting her sexual assault allegation and publicizing her confession with a press release. Finally, Count XI alleges that Adkins and Roop defrauded Bermeo by misrepresenting the contents of the surveillance footage from the Old Jonesboro Road house.

The defendants moved to dismiss Bermeo's complaint. In support of that motion, they referred the district court to a recording—which they had previously submitted to the court—of the October 13, 2020 interview in which Bermeo recanted her allegation. During oral argument on the motion, the district court asked Bermeo if it could "consider the audio

recording . . . at the Rule 12 stage." J.A. 101. Bermeo replied that the district court could "because [Bermeo] didn't object to it." *Id.*

The district court dismissed Bermeo's complaint under Federal Rule of Civil Procedure 12(b)(6). It first noted that "[e]ach of Bermeo's eleven claims rest[ed] on the premise that the defendants engaged in unconstitutional policing practices during their interactions with Bermeo." *Id.* at 132. And then it determined that the defendants' recording undermined that premise. According to the district court, "Bermeo's Second Amended Complaint states that her confession during the October 13, 2020, conversation with Adkins and Roop was obtained through coercion, but the recording of this conversation plainly shows that the parties engaged in a concise, civil discussion that involved no coercion whatsoever." *Id.* at 134 (citations omitted). The district court also explained that the officers "repeatedly expressed their concern for Bermeo's wellbeing and offered to connect her with counselors." *Id.* at 133–34.

Bermeo moved for reconsideration under Federal Rule of Civil Procedure 59(e). In denying that motion, the district court noted that "neither Bermeo nor defendants objected to the court's consideration of the recording in deciding the motion to dismiss." *Id.* at 147. It said it relied on the recording because it was "integral to the Second Amended Complaint . . . and that there were obvious contradictions between the recording and the allegations in the Second Amended Complaint." *Id.* (internal quotation marks and citations omitted). Explaining those contradictions, the district court said the recording "reveal[ed] an utter lack of coercion" and "plainly support[ed] the conclusion that Bermeo voluntarily admitted that she fabricated the traffic stop." *Id.* at 148. It also found the recording blatantly

8

contradicted Bermeo's allegation that she "did not think that she had any choice but to tell Roop and Adkins what they wanted to hear." *Id.* (cleaned up).[4]

This appeal followed.[5]

## II.

Bermeo argues that the district court erred in dismissing her complaint because it inappropriately relied on the defendants' recording. To assess that challenge, we start with some basics. Generally, a district court considering a Rule 12(b)(6) motion must accept the "factual matter" pled in the complaint—that is, allegations that are not "mere conclusory statements"—as true. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555, 570 (2007)). At this stage, the district court is "limited to considering the sufficiency of the allegations set forth in the complaint and the documents attached or incorporated into the complaint" and may not "resolve contests surrounding the facts" or "the merits of a claim." *Halscott Megaro, P.A. v. McCollum*, 66 F.4th 151, 157

---

[4] The district court didn't apply *Doriety* in its initial memorandum opinion denying Bermeo's motion to dismiss, and for good reason—*Doriety* hadn't yet been decided. The district court instead relied on our guidance for how to treat a document a plaintiff has attached to her complaint. J.A. 134 ("[I]n the event of a conflict between the bare allegations of the complaint and any exhibit attached . . ., the exhibit prevails." (second alteration in original) (quoting *Goines v. Valley Cmty. Servs. Bd.*, 822 F.3d 159, 166–67 (4th Cir. 2016))). But we decided *Doriety* before the district court denied Bermeo's motion for reconsideration, and in denying reconsideration, it relied on *Doriety*.

[5] Bermeo timely appealed from the denial of reconsideration. *See* Fed. R. App. P. 4(a)(4)(A)(iv) (filing a Rule 59 motion extends the time to file a notice of appeal to 30 days following the disposition of the motion). We have jurisdiction over this appeal under 28 U.S.C. § 1291. And we review a district court's dismissal of a complaint under Rule 12(b)(6) de novo. *Benjamin v. Sparks*, 986 F.3d 332, 351 (4th Cir. 2021).

9

(4th Cir. 2023) (internal quotation marks and citations omitted). If the district court wants to look beyond the complaint and any attachments to it, the motion to dismiss "must be treated as one for summary judgment under Rule 56," and "[a]ll parties must be given a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

But, as we explained at the beginning, there's an exception. "[A] district court can consider a [recording] submitted at the motion to dismiss stage when (1) the [recording] is 'integral' to the complaint and its authenticity is not challenged, but (2) only to the extent that the [recording] 'clearly depicts a set of facts contrary to those alleged in the complaint,' or 'blatantly contradicts' the plaintiff's allegations, rendering the plaintiff's allegations implausible."[6] *Doriety*, 109 F.4th at 680 (quoting *Saalim v. Walmart, Inc.*, 97 F.4th 995, 1002 (6th Cir. 2024)). Importantly, this exception is narrow. It only allows a court to rely on a recording to dismiss a complaint under Rule 12(b)(6) when the recording blatantly contradicts "the plaintiff's version of *the facts*." *Doriety*, 109 F.4th at 679–80 (emphasis added).

---

[6] This standard is identical to that applied at summary judgment. *See Scott v. Harris*, 550 U.S. 372, 380 (2007) ("At the summary judgment stage, facts must be viewed in the light most favorable to the nonmoving party only if there is a 'genuine' dispute as to those facts. . . . When opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." (quoting Fed. R. Civ. P. 56(c)). Additionally, while *Scott* and *Doriety* involved video recordings rather than audio recordings, their logic applies in full force to audio recordings. *See, e.g.*, *Rambert v. City of Greenville*, 107 F.4th 388, 394 n.1 (4th Cir. 2024) (applying the *Scott* standard to credit an audio recording at summary judgment).

For the most part, the district court ruled that the recording was inconsistent with Bermeo's claim that she was coerced into confessing. But coercion is a legal characterization of factual allegations, not a factual allegation itself. So, the recording cannot be used to contradict it.

The district court did identify one factual allegation it found to be blatantly contradicted by the recording. It found the recording contradicted Bermeo's allegation that she "did not think that she had any choice but to tell Roop and Adkins what they wanted to hear."[7] J.A. 148 (cleaned up). While that's certainly a factual allegation, the recording didn't blatantly contradict it. Perhaps the recording calls Bermeo's allegation into question. And true, "testimony by an accused about his prior subjective mental impressions and reactions must be carefully scrutinized" since it may be motivated by self-interest. *United States v. Braxton*, 112 F.3d 777, 781 (4th Cir. 1997). Even so, we don't make credibility determinations at the motion-to-dismiss stage. *See Neitzke v. Williams*, 490 U.S. 319, 327 (1989) ("What Rule 12(b)(6) does not countenance are dismissals based on a judge's disbelief of a complaint's factual allegations."). And in effect, the district court's assessment of this allegation is that it is not credible based on the recording. *Doriety* doesn't permit that. *Cf. Alexander v. Connor*, 105 F.4th 174, 179 (4th Cir. 2024) (noting in the context of summary judgment that "[a] court may not disregard contrary evidence just

---

[7] Bermeo's subjective belief is relevant to her allegation that the defendants violated her rights because a confession is involuntary when, based on "the totality of all the surrounding circumstances," including "the characteristics of the accused and the details of the interrogation," the accused's "will was overborne." *Schneckloth v. Bustamonte*, 412 U.S. 218, 226 (1973).

11

because there is a video that lines up with a governmental officer's version of events or even makes it unlikely that the plaintiff's account is true" (internal quotation marks and citation omitted)).

That doesn't mean the recording is irrelevant in this case. It may ultimately bear heavily on the determination of whether Bermeo's confession was coerced. But at the Rule 12(b)(6) stage, the district court erred in determining that recording blatantly contradicted the factual allegations in Bermeo's complaint.[8]

## III.

Because the district court credited the defendants' recording over Bermeo's factual allegations where no blatant contradiction existed, its dismissal of her complaint is,

*VACATED AND REMANDED.*

---

[8] The defendants ask us to find that Bermeo invited any error by telling the district court that it could consider the recording. "Under the invited error doctrine, 'a court can not be asked by counsel to take a step in a case and later be convicted of error, because it has complied with such request.'" *United States v. Naum*, 134 F.4th 234, 239 (4th Cir. 2025) (quoting *United States v. Herrera*, 23 F.3d 74, 75 (4th Cir. 1994)), *cert. denied*, 2025 WL 2824294 (U.S. Oct. 6, 2025). But any invitation seems related to whether the video was integral to the complaint and authentic—the two prerequisites to considering a document outside of the complaint at all—not whether it blatantly contradicted factual allegations. *See Doriety*, 109 F.4th at 676, 680. The defendants also ask us to affirm the dismissal of Bermeo's complaint on various alternative grounds, including qualified immunity as to Bermeo's constitutional claims. We think that the better course of action is to let the district court address these grounds in the first instance, *see* 28 U.S.C. § 2106, so we don't reach them.